**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | | |
|---|---|---|
| **RUGGED CROSS HUNTING BLINDS, LLC,** *Plaintiff,* | § | |
| **vs.** | § | **CASE NO. 8:23-cv-02289-WFJ-UAM** |
| **GOOD SPORTSMAN MARKETING, LLC, HADLEY DEVELOPMENT, LLC and TRU-VIEW, LLC,** *Defendants.* | § | **JURY DEMANDED** |

**GOOD SPORTSMAN MARKETING, LLC'S**
**MOTION TO DISMISS FOR LACK OF PESONAL JURISDICTION AND IMPROPER VENUE AND MOTION TO SEVER AND TRANSFER UNDER FIRST-FILED RULE OR TRANSFER UNDER § 1406(a) IN THE ALTERNATIVE**

Good Sportsman Marketing, LLC ("GSM") files this Motion to Dismiss for Lack of Personal jurisdiction and Improper Venue and Motion to Sever and Transfer Under First-Filed Rule or Transfer Under § 1406(a) in the Alternative (the "Motion") against Rugged Cross Hunting Blinds, LLC ("RCHB").

## I. NATURE AND STAGE OF PROCEEDINGS

On October 9, 2023, RCHB filed this lawsuit for alleged patent infringement of U.S. Patent No. 11,399,535 entitled "Camouflage Material, for a Hunting Blind" (the "'535 Patent") against GSM, Hadley Development, LLC ("Hadley"), and Tru-View, LLC ("Tru-View"). On October 12, 2023, GSM waived service of summons (which waiver was filed by RCHB on October 16, 2023), allowing GSM to file an answer or

responsive pleading within 60 days thereafter (i.e., on or before December 11, 2023). Dkt. 13; Fed. R. Civ. P. 12(a)(1)(B), 12(b).

## II. STATEMENT AND BASIS OF THE RELIEF REQUESTED

Pursuant to Fed. R. Civ. P. 12(b)(2), the claims against GSM should be dismissed because this Court lacks personal jurisdiction over GSM, since the exercise of personal jurisdiction would be unfair and unreasonable in violation of due process. Further, pursuant to Fed. R. Civ. P. 12(b)(3), the claims against GSM should be dismissed, because venue is improper in this district under 28 U.S.C. § 1400(b)— GSM does not have a regular and established place of business in this district, and further, GSM did not allegedly waive its right to challenge venue in Florida, because it never signed the Non-Disclosure Agreements ("NDAs") that were signed by Hadley and Tru-View.

If GSM is not dismissed, then GSM moves to sever RCHB's patent infringement claims (Counts I and II) under Fed. R. Civ. P. 21 and either dismiss or transfer them to GSM's suit against RCHB pending in the Southern District of Texas, Houston Division. Transfer is appropriate under the first-filed rule, based on GSM's lawsuit that was first-filed against RCHB on August 31, 2023 in the Southern District of Texas, Houston Division,[1] seeking a declaratory judgment of noninfringement and

---

[1] *Good Sportsman Marketing, LLC v. Rugged Cross Hunting Blinds, LLC*, No. 4:23-cv-3243, U.S. District Court for the Southern District of Texas, Houston Division, Honorable Judge George Hanks, Jr. presiding (the "Texas suit").

invalidity of the ’535 Patent, which involves an overlap of parties, the same ‘535 Patent, and the same accused products at issue in this suit.[2]

As a last alternative, if the claims are not transferred to the Texas suit under the first-filed rule, since venue is improper in this district, GSM requests the Court to sever RCHB’s claims under Fed. R. Civ. P. 21 and transfer them under 28 U.S.C. § 1406(a) to the Northern District of Texas, Dallas Division, where venue is proper as to GSM under § 1400(b).

## III. LEGAL STANDARDS

### A. Personal Jurisdiction

“Personal-jurisdiction analysis for patent-infringement claims is governed by Federal Circuit law.” *Univ of Mass. v. L’Oreal S.A.*, 36 F.4th 1374, 1384 (Fed. Cir. 2022). “A district court can exercise personal jurisdiction over an out-of-state defendant pursuant to either general or specific jurisdiction.” *NexLearn v. Allen Interactions, Inc.*, 859 F.3d 1371, 1375 (Fed. Cir. 2017). “Under general jurisdiction, a district court can hear any and all claims against [out-of-state defendants] when their affiliations with the State are so ‘continuous and systematic’ as to render them essentially at home in the forum State.” *Id.* (quoting *Daimler AG v. Bauman*, 124 S. Ct. 746, 749 (2014) (citations omitted)). “Specific jurisdiction instead focuses on the relationship among the defendant, the forum, and the litigation.” *Id.* (internal quotations and citations omitted).

[2] GSM’s Texas suit also seeks a declaration of noninfringement and invalidity on a second RCHB patent, U.S. Patent No. 10,765, 108, that RCHB had also threatened GSM with infringement.

"[W]hether a defendant is subject to specific personal jurisdiction in the forum state involves two inquiries: first, whether the forum state's long-arm statute permits service of process and, second, whether the assertion of jurisdiction is consistent with due process." *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015). "Under Florida's long-arm statute, specific jurisdiction over a non-resident defendant is proper when the defendant '[c]ommit[s] a tortious act within' Florida. *Tufts v. Hay*, 977 F.3d 1204, 1211 (11th Cir. 2020) (quoting Fla. Stat. § 48.193(1)(a)(2)). "Patent infringement constitutes a tort within the meaning of the statute." *Jones v. J.S. Foster Corp*, 2017 U.S. Dist. LEXIS 85008, at *3 (M.D. Fla. Jun 1, 2017).

Whether the assertion of specific personal jurisdiction is consistent with due process, the Federal Circuit considers three factors: (1) whether the defendant purposefully directed its activities at residents of the forum; (2) whether the claim arises out of or relates to the defendant's activities within the forum; and (3) whether assertion of personal jurisdiction is reasonable and fair. *Celgard*, 792 F.3d at 1377; *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed Cir. 2001). "The first two factors correspond with the 'minimum contacts' prong of *International Shoe*, and the third factor corresponds with the 'fair play and substantial justice' prong." *Celgard*, 792 F.3d at 1378 (quoting *Inamed Corp.*, 249 F.3d at 1360). "The plaintiff bears the burden of affirmatively establishing the first two elements of the due process requirement." *Id.* "If the plaintiff meets its burden, the burden shifts to the defendant to prove that personal jurisdiction is unreasonable." *Id.*

**B. Venue**

"The burden to establish venue in patent infringement cases rests with the plaintiff." *In re Volkswagen Grp. of Am.*, 28.4th 1203, 1207 (Fed. Cir. 2022). "Whether venue is appropriate in a patent infringement action is unique to patent law and therefore Federal Circuit law applies." *Id.* "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, ***or*** where the defendant has committed acts of infringement ***and*** has a regular and established place of business." 28 U.S.C. § 1400(b) (emphasis added). The Supreme Court held that § 1400(b) is the "**sole and exclusive** provision controlling venue in patent infringement actions, and . . . is not to be supplemented by . . . § 1391(c)." *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 266 (2017) (emphasis added).

"[F]or the purposes of § 1400(b) domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute." *TC Heartland LLC,* 581 U.S. at 261. "The regular and established place of business inquiry has three general requirements: (1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Volkswagen*, 28 F.4th at 1208 (internal quotations omitted).

**C. First-Filed Rule (First-to-File Rule)**

"When parties have instituted competing or parallel litigation in separate courts, the first-filed rule provides that 'the court initially seized of the controversy should hear the case.'" *Salt Life, LLLC v. Shaka Life, Inc.*, 2018 U.S. Dist. LEXIS 225879, at *3

(M.D. Fla. Nov. 30, 2018) (quoting *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d 71, 78 (11th Cir. 2013)). "Courts in the Eleventh Circuit have held that '[w]here two actions involving overlapping issues and parties are pending in two federal courts, there is a **strong presumption** across the federal circuits **that favors the forum of the first-filed suit under the first-filed rule**." *Id.* (quoting *Collegiate Licensing Co.*, 713 F.3d at 78). "The 'first-to-file' rule creates 'a strong presumption' that an action in one federal court that involves 'overlapping issues and parties' should be adjudicated by the court where the matter was first filed." O*pulent Treasures, Inc., v. Ya Ya Logistics, Inc.*, 2023 U.S. Dist. LEXIS 92802, at *5 (M.D. Fla. May 26, 2023) (quoting *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005); *see also Rudolph & Me, Inc. v. Ornament Cent., LLC*, 2011 U.S. Dist. LEXIS 100430, at *3 (M.D. Fla. Sep. 7, 2011). "The 'first-to-file' rule is rooted in comity and aims to prevent duplication, wasting judicial resources, and conflicting rulings." O*pulent Treasures, Inc.*, 2023 U.S. Dist. LEXIS at *9 (citing *Vital Pharms., Inc. v. PhD Mktg.*, 2020 U.S. Dist. LEXIS 198931, at *1 (S.D. Fla. Jul 28, 2020).

When evaluating a complaint that was filed subsequently under the first-filed rule, "[s]uch a complaint must be **dismissed** or **transferred** to the district where the first-filed case is pending." *Opulent Treasures, Inc.*, 2023 U.S. Dist. LEXIS at *5 (emphasis added) (internal quotations and citations omitted). "The first-to-file rule does not require identical lawsuits—only 'sufficiently similar[]' or 'substantially overlap[ping]' parties and issues." *Id.* (internal citation omitted); *see also Strother v.*

*Hylas Yachts, Inc.*, 2012 U.S. Dist. LEXIS 141692, at *4 (S.D. Fla. Oct. 1, 2012) ("All that need be present is that the two actions involve closely related questions or common subject matter. The cases need not be identical to be duplicative.") (quotation and alterations omitted). "The asserted claims and parties need not be the same for transfer to be appropriate." *Opulent Treasures, Inc.*, 2023 U.S. Dist. LEXIS at *7.

"In making the determination whether to transfer pursuant to the first-filed rule, the court where the second-filed action was filed considers the following factors: '(1) the chronology of the two actions; (2) the similarity of the parties, and (3) the similarity of the issues.'" *Salt Life, LLC*, 2018 U.S. Dist. at *4 (quoting *Rudolph & Me, Inc.*, 2011 U.S. Dist. LEXIS, at *4). "The party objecting to the first-filed rule bears the burden of proving compelling circumstances to warrant an exception to the rule." *Id.* at *5.

"In determining whether an exception to the first-filed rule is warranted, one equitable consideration is whether a 'party, on notice of a potential law suit [*sic*], files a declaratory judgment action in its home forum.'" *Id.* (quoting *Allstate Ins. Co. v. Clohessy*, 9 F.Supp. 2d 1314, 1316 (M.D. Fla. 1998)). "However, the existence of a first-filed declaratory judgment action does 'not automatically compel abandoning the first-filed rule . . .[a]nd even where those conditions are present, the first-filed action is preferred, even if it is declaratory . . ." *Id.* (internal quotations and citations omitted). "Rather, the matter remains within the first-filed court's discretion." *Id.*.

## IV. ARGUMENT

### A. The exercise of personal jurisdiction over GSM is unreasonable, and thus, does not comport with due process.

As an initial matter, RCHB may argue that GSM waived its right to challenge the Court's exercise of personal jurisdiction over it, because of NDAs signed by each co-defendant, Hadley and Tru-View, in connection with negotiation of potential settlement on behalf of themselves and their customers, like GSM. *See* Dkt. 1 ¶ 10. But that is simply not the case, because GSM *never* signed the NDAs referenced in RCHB's complaint—GSM is not a party to those NDAs. *See* Dkt. 1, EXHIBIT "B" (copy of NDA signed by Hadley) ¶ 14 and EXHIBIT "C" (copy of NDA signed by Tru-View) ¶ 15. Because of **lack of privity of contract between RCHB and GSM**, GSM (as a non-party to the NDAs) cannot be bound to the terms of the NDA. Therefore, GSM never waived its ability to challenge personal jurisdiction in the courts in Florida. "Privity of contract is that connection or relationship which exists between two or more contracting parties; it is essential to the maintenance of an action on any contract that there should subsists a privity between the plaintiff and defendant in respect to the matter sued upon." *Sumitomo Corp. of Am. V. M/V St. Venture*, 683 F.Supp. 1361, 1368 (M.D. Fla. 1988); *see also Zendejas v. Redman*, 2017 U.S. Dist. LEXIS 90503, *21 (S.D. Fla. Jun. 13, 2017) ("It is an elementary principle of English law — known as the doctrine of 'Privity of Contract' — that contractual rights and duties only affect the parties to a contract...." (quoting Black's Law Dictionary (10th ed. 2014)). Because GSM was not a party to either of the NDAs, there is no privity of contract between RCHB and GSM, and thus, no basis for RCHB to argue that GSM agreed to the personal jurisdiction of courts in Florida. Further, if RCHB really

believes that it can impose the jurisdictional clauses against GSM from the NDAs, then it should have sued GSM for breach of the NDAs—it did not and cannot.

Next, RCHB appears to concede that the Court does not have **general personal jurisdiction** over GSM. In its complaint, RCHB pleads allegations relating to specific personal jurisdiction, but there is no mention of any "continuous and systematic" contacts by GSM with Florida, which is the standard required to establish general personal jurisdiction. *See generally*, Dkt. 1 ¶ 10. That said, this Court does not have general personal jurisdiction over GSM, because GSM does not have any physical offices, employees, or agents in Florida. Declaration of Doug Mann ("Mann Decl.") ¶ 9. Thus, it cannot be said that GSM's contact with Florida is so "continuous and systematic as to render GSM essentially at home in Florida." *See NexLearn*, 859 F.3d at 1375.

For specific personal jurisdiction, "[r]elated to the third factor regarding whether assertion of personal jurisdiction is "reasonable and fair," "[w]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Genetic Veterinary Scis., Inc. v. LABOKLIN GmbH & Co. KG,* 933 F.3d 1302, 1310 Fed. Cir. 2019) (quoting *Burger King Corp. Rudzewicz*, 471 U.S. 462, 476 (1985)).

In *Burger King*, the Supreme Court identified five considerations relevant to the reasonableness inquiry for exercising specific personal jurisdiction: (1) the burden on

defendant; (2) the forum State's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 477 (internal quotations and citation omitted). "The primary concern in assessing personal jurisdiction is the **burden on the defendant**." *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 256 (2017) (emphasis added) (internal quotations and citation omitted).

First, the burden on GSM to litigate in the Middle District of Florida is very high, considering that RCHB is a patent troll or operates like a patent troll. With its principal place of business in Tampa, Florida, RCHB was founded by two brothers, Christopher Seaton ("Chris") and Timothy Seaton ("Tim"), in October 2015. *See* Declaration of Christopher Seaton, October 13, 2023 ("First C. Seaton Decl.") ¶¶ 3-4 (also filed as Dkt. 14-15 in the Texas suit). Living in Tampa, Chris is a retired detective and Tim has a **full-time job** as a firefighter. *Id.* ¶ 15; *see also* Declaration of Christopher Seaton, November 27, 2023 ("Second C. Seaton Decl.") ¶ 2 (also filed as Dkt. 26-1 in the Texas suit) ("Tim and I are both first responders.").

Chris and Tim are the only members of RCHB and they never had any employees. First C. Seaton Decl. ¶ 5. "RCHB has made and sold hunting blinds to consumers that order the blinds. For the past five years, RCHB has only made and sold up to five blinds a year." *Id.* ¶ 6. Although RCHB "was originally formed as a

business to assemble and sell hunting blinds," after obtaining the '535 Patent and also U.S. Patent No. 10,765, 108 (the "'108 Patent"), RCHB business operations expanded to "include **licensing companies** that supply hunting blinds to the outdoor industry." *Id.* ¶¶ 13-14 (emphasis added). "RCHB still makes a small number of hunting blinds each year," but its "**primary business has transitioned to licensing**, which sometimes requires enforcement of the '535 Patent." Second C. Seaton Decl. ¶ 20 (emphasis added). "Currently, RCHB has licensed **four different companies** including Primos, Primal Treestands, Outtech Inc., and Millenium Outdoors." *Id.* ¶ 21 (emphasis added).

A two-person business (with Tim having a full-time job as a firefighter and Chris being a first responder), with no other employees, that only sells up to five blinds a year for the past five years, and only for orders on demand, that now has a **primary business of licensing its patents** to companies that supply hunting blinds to the outdoor industry, certainly has the characteristics of being a patent troll or is a patent troll with very limited sales. Granted, during the first couple of years of existence, RCHB may have started off with the intent to manufacture and sell its one-way see through mesh hunting blinds to customers, but that business model changed shortly thereafter, when RCHB granted a patent license to Primos in 2017 and patent licenses were granted to other companies, subsequently. *See* Second C. Seaton Decl. ¶¶ 15, 21.

RCHB has very little interest in manufacturing and selling hunting blinds to customers., rather, "our primary business has transitioned to licensing" so that RCHB

can assert its patents in order to extract a license and the concomitant revenue. *See id.* ¶ 20. The two C. Seaton declarations submitted by RCHB in the Texas suit, purported to serve as an attempt to explain away how RCHB is not a patent troll. However, those declarations actually support that RCHB is a patent troll or a patent troll with limited sales, now that its primary business is licensing its patents, which it has succeeded with four companies so far. *See* id. ¶ 21.

In stark contrast to RCHB's business operations, GSM operates nationally, with over 40 brands involved with hunting, shooting sports, rugged outdoors, and fishing, selling various products for outdoorsmen. Mann Decl. ¶ 6. GSM advertises and markets its products through its main website (www.gsmoutdoors.com). *Id.* ¶ 12. Through its various subsidiary brands, including Muddy (www.gomuddy.com) and Ameristep (www.ameristep.com), GSM advertises, markets, and sells its products, including various models of ground hunting blinds at issue in this lawsuit, through its subsidiaries' websites. *Id.* ¶ 13. GSM also advertises, markets, and sells its products, including some models of ground hunting blinds at issue in this lawsuit, through brick & mortar retail stores (e.g., specialty sporting goods retailers, mass merchandising centers, and club stores including Bass Pro Shops and Walmart), including these retail stores' respective websites. *Id.* ¶ 14. GSM has sold Muddy Prevue 2, Muddy Prevue 3, Muddy Infinity 2-Person, Muddy Infinity 3-Person, and/or Ameristep Pro Series Extreme View Hub Blind (which are models of hunting blinds at issue in this suit) to customers located in Texas, including to individuals and/or retailers located in the

Southern District of Texas, Houston Division, and in the Northern District of Texas, Dallas Division. *Id.* ¶ 15.

GSM has a physical office located at 5250 Frye Road, Irving, Texas 75061 in Dallas County, which serves as GSM's headquarters office. *Id.* ¶ 7. This office is a regular and established place of business, where executives, senior vice presidents, vice presidents, managers, and other employees report to work and oversee the development, marketing, and sales of products across over 40 of GSM's brands. *Id.* A significant number of GSM's executives, high-level employees, and documents are located in Texas, particularly in the Irving, Texas headquarters office. *Id.* ¶ 8. GSM does not have any physical offices located in Florida and has no employees or agents located in Florida. *Id.* ¶ 9. GSM does not have any documents located in Florida. *Id.* ¶ 9. GSM does not regard RCHB as a competitor to its ground hunting blinds business. *Id.* ¶ 11.

The burden for GSM to litigate this case in the Middle District of Florida against a patent troll (or a patent troll with very little sales) is high, considering that GSM has no physical offices, employees, agents, or documents located in Florida and the fact that a significant number of GSM's executives, high-level-employees, and documents are located in Texas that will be relevant to this case. *Id.* ¶ 8-10. Having to travel to this district to defend itself against a patent troll, who does not compete with GSM, brings significant burden to GSM in terms of time, litigation expenses that may amount to millions of dollars, and business disruption to GSM.

Second, Florida has little interest in adjudicating this patent infringement dispute brought on by a patent troll, like RCHB. In fact, Florida enacted the **Patent Troll Prevention Act**, Fla Stat. § 501.991 *et seq.*, which was enacted to protect business and consumers from abusive and bad faith demands and litigation arising from patent claims. "The expense of patent litigation, which may cost millions of dollars, can be a significant burden on companies and small businesses. Not only do bad faith patent infringement claims impose undue burdens on individual businesses, they undermine the state's effort to attract and nurture technological innovations." Fla Stat. § 501.991(3). Because Florida has enacted a statute that is designed to prevent bad faith assertions of patent infringement, it has little interest in adjudicating this action, that *may* have been brought in bad faith as a patent troll. *Id.* § 501.993.

Third, as a Tampa, Florida business, RCHB will likely argue that it has an interest in obtaining convenient and effective relief in Florida, since litigating this case in its "hometown" would be convenient and effective as it would reduce its expenses as a small business. Such an argument is without merit, considering that RCHB had filed suits against other parties across the country for patent infringement, which are still pending: (1) Feradyne Outdoors, LLC in **Wisconsin**[3]; and (2) DBR Finance, Inc. in **Ohio**.[4] As a patent troll, RCHB's business model is to enforce its patents to extract

[3] *Rugged Cross Hunting Blinds, LLC v. Feradyne Outdoors, LLC*, No. 3:22-cv-00690-jdp, U.S. District Court for the Western District of Wisconsin (the "Wisconsin suit").

[4] *Rugged Cross Hunting Blinds, LLC v. DBR Finance, Inc.*, No. 1:23-cv-01944-jpc, U.S. District Court for the Northern District of Ohio, Eastern Division (the "Ohio suit").

lucrative licensing fees from defendants all over the country, wherever they may be located. RCHB has little interest in filing suits in Florida and has strong interest in going after the large company targets, like GSM. Further, since GSM has no employees or agents in Florida and a significant number of GSM's executives and high-level employees are in Texas, RCHB's counsel will require travel outside of Florida to take depositions of GSMs employees and officers. *See* Mann Decl. ¶¶ 7-9. Based on the foregoing reasons, RCHB cannot make a colorable argument that it can obtain more convenient and effective relief to litigate in Florida.

Fourth, the interstate judicial system's interest in obtaining the most efficient resolution of controversies disfavors the exercise of personal jurisdiction over GSM in Florida. With respect to the interstate judicial system's interest, the most efficient resolution of the controversies between GSM and RCHB regarding alleged patent infringement is to follow the first-filed rule, by either dismissing the claims asserted against GSM outright or severing and transferring them to the Southern District of Texas, Houston Division, where GSM's lawsuit was first-filed against RCHB.[5]

Fifth, with respect to the several States' shared interest in furthering fundamental substantive social policies, this factor tends to weigh neutrally. There is no conflict between the interests of Florida and any other state, because the same body of federal patent law would govern the patent infringement claims irrespective of the forum. *Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147, 1159 (Fed. Cir. 2021) ("there

[5] GSM's briefing on the first-filed rule is set forth in Section IV.D, *infra*.

does not appear to be any conflict between the interests of California and any other state, because the same body of federal patent law would govern the patent [non]infringement claims irrespective of the forum").

Four of the five *Burger King* factors weigh strongly in favor of GSM, indicating that the exercise of personal jurisdiction against it is unreasonable, particularly the burden on GSM to defend itself against a patent troll that may have asserted patent claims in bad faith. *Bristol-Myers Squibb Co*, 582 at 256 ("The primary concern in assessing personal jurisdiction is the burden on the defendant."); Fla Stat. § 501.991 *et seq*. Under *Burger King*, the Court's exercise of specific personal jurisdiction over GSM is unreasonable and does not comport with due process. For this reason, the Court should dismiss GSM from this suit under Fed. R Civ. P. 12(b)(2).

### B. Venue is improper in this district under 28 U.S.C. § 1400(b), because GSM does not have a regular and established place of business in this district.

Not only should this case be dismissed due to the lack of personal jurisdiction, but independently, this case should be dismissed under Fed. R. Civ. P. 12(b)(3), because venue is improper in this district because it does not comply with the exclusive patent infringement venue statute. Under 28 U.S.C. § 1400(b), venue is proper in patent infringement cases in the judicial district: (1) where the defendant resides; ***or*** (2) where the defendant has committed acts of infringement ***and*** has a regular and established place of business. 28 U.S.C. § 1400(b) (emphasis added). *TC Heartland*, a U.S. Supreme Court case, made it clear that § 1400(b) is the **sole venue statute** that

exclusively controls patent infringement cases. *TC Heartland LLC*, 581 U.S. at 266. Notably, in pleading venue in its complaint, RCHB recognizes that venue for patent infringement cases is governed by § 1400(b) and cites to no other venue provisions. *See* Dkt. 1 ¶ 11.

As a Delaware limited liability company (registered as a foreign limited liability company in Texas), GSM resides in Delaware, and thus, venue would be appropriate in the District of Delaware as to GSM. *See* Mann Decl. ¶ 5; 28 U.S.C. § 1400(b); *TC Heartland*, 581 at 261. Because RCHB did not file suit in the District of Delaware, RCHB must attempt to establish venue under the other clause of § 1400(b)—in the judicial district "where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). "The regular and established place of business inquiry has three general requirements: (1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Volkswagen*, 28 F.4th at 1208 (quotations omitted).

GSM does not have any physical offices in Florida, and thus, does not have a regular and established place of business in this district. Mann Decl. ¶ 9. GSM has no employees or agents located in this district. *Id.* Even if GSM had committed acts of infringement in this district (e.g., by offering for sell or selling accused hunting blinds), venue is still improper because GSM does not have a regular and established

place of business in this district. *See* 28 U.S.C. 1400(b); *TC Heartland LLC*, 581 U.S. at 266; *In re Volkswagen*, 28 F.4th at 1208.

An argument that GSM waived its right to object to venue in this district, because of NDAs signed by Hadley and Tru-View in connection with settlement negotiations for themselves and their respective customers, including GSM, is wholly without merit. *See* Dkt. 1 ¶¶ 10-11; Dkt. 1, EXHIBIT "B" (copy of NDA signed by Hadley) ¶ 14 and EXHIBIT "C" (copy of NDA signed by Tru-View) ¶ 15. GSM has not waived objection to venue in this district. GSM never signed these NDAs, and thus, lacks privity of contract with RCHB. Because there is no contractual privity between RCHB and GSM, GSM is not bound by the venue selection clause in Florida as provided in these NDAs. *Sumitomo Corp. of Am.*, 683 F.Supp. at 1368; *Zendejas*, 2017 U.S. Dist. LEXIS 90503, *21.

Based on the foregoing reasons, RCHB's claims against GSM should be dismissed for improper venue under Fed. R. Civ. P. 12(b)(3).

**C. Under the first-filed rule, the claims against GSM should be dismissed outright or severed and transferred to the Texas suit.**

About two months prior to the filing of this suit by RCHB, on August 31, 2023, GSM had first-filed a lawsuit against RCHB in the case styled, *Good Sportsman Marketing, LLC v. Rugged Cross Hunting Blinds, LLC*, No. 4:23-cv-3243, U.S. District Court for the Southern District of Texas, Houston Division (the "Texas suit"). In the Texas suit, GSM asserted claims against RCHB for declaratory judgments of

noninfringement and invalidity of the '535 Patent and the '108 Patent[6] and for tortious interference with contractual relations that GSM has with Walmart and Bass Pro Shops. *See* Cabello Decl. ¶ 4, Exhibit A (Dkt. 1, Complaint for Declaratory Judgment, Texas suit).[7]

Under the first-filed rule (sometimes referred to as the "first-to-file rule"), RCHB's claims against GSM in this suit should be **dismissed** outright, or in the alternative, severed and transferred to the Texas suit. *Opulent Treasures, Inc.*, 2023 U.S. Dist. LEXIS at *5 ("Such a complaint must be **dismissed** or **transferred** to the district **where the first-filed case is pending**.") emphasis added) (internal quotations and citations omitted). "In making the determination whether to transfer pursuant to the first-filed rule, the court where the second-filed action was filed, considers the following factors: '(1) the chronology of the two actions; (2) the similarity of the parties, and (3) the similarity of the issues.'" *Salt Life, LLC*, 2018 U.S. Dist. at *4 (quoting *Rudolph & Me, Inc.*, 2011 U.S. Dist. LEXIS, at *4).

In the event that the Court does not outright dismiss the claims asserted by RCHB against GSM for lack of personal jurisdiction, improper venue, or under the first-filed rule, then all three factors weigh in favor of transferring (after severance

---

[6] The '108 Patent has not been asserted by RCHB against GSM in this suit.

[7] In the Texas suit, effective November 7, 2023, RCHB filed a motion to dismiss for lack of personal jurisdiction and improper venue and motion to transfer in the alternative. Dkts. 14, 21 Texas suit. On November 21, 2023, GSM filed a response in opposition. Dkt. 22, Texas suit. On November 28, 2023, RCHB filed a reply. Dkt. 26, Texas suit. Briefing on RCHB's motion is complete and the parties are awaiting a ruling.

under Fed. R. Civ. P. 21[8]) the claims to the Texas suit under the first-filed rule. First, the chronology of the two actions: GSM first-filed its lawsuit against RCHB on August 31, 2023[9] and RCHB second-filed its lawsuit against GSM on October 9, 2023. *See* Cabello Decl. ¶ 4, Exhibit A; *see also* Dkt. 1. Second, the parties are similar: GSM is the plaintiff and RCHB is the defendant in the Texas suit and RCHB is the plaintiff and GSM is the defendant in this suit (along with co-defendants, Hadley and Tru-View). *Id*. Third, both lawsuits have similar issues. The Texas suit involves GSM's claim for a declaratory judgment of noninfringement of the '535 Patent and the '108 Patent in connection with certain models of GSM hunting blinds sold under the Muddy and Ameristep brands and a declaratory judgment of invalidity of the '535 Patent and the '108 Patent. Cabello Decl. ¶ 4, Exhibit A. In this suit, RCHB accuses GSM of infringing the '535 Patent in connection with the same models of GSM hunting blinds, sold under the Muddy and Ameristep brands. *See* Dkt. 1

There is an overlap of parties, the same '535 Patent is at issue, and the same accused hunting blinds are at issue. Both suits will undoubtedly, involve the same fact

---

[8] Federal Rule of Civil Procedure 21 governs the misjoinder of parties, which states, "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21.
Since this suit involves co-defendants, Hadley and Tru-View, GSM requests that the Court first sever RCHB's claims asserted against it under Fed. R. Civ. P. 21, and then transfer them to the Texas suit under the first-filed rule.

[9] GSM's Texas suit was instituted after about three years of threats by RCHB to sue it for patent infringement in cease-and-desist letters. An RCHB argue that GSM "raced to the courthouse" to gain an advantage is without merit. Rather, GSM's Texas suit was prompted by RCHB's amplified threats of litigation over it in the span of about three years, including sending cease-and-desist letters to GSM's customers, Bass Pro Shops and Walmart.

and expert witnesses, same discovery requests, same custodians to search for documents, and likely the same documents. Therefore, under the first-filed rule, this Court should dismiss, or if not dismissed, transfer RCHB's claims against GSM to the Texas suit as the first-filed suit, because all three factors support transfer. *See Salt Life, LLC*, 2018 U.S. Dist. at *4. If RCHB's claims are transferred to the Southern District of Texas, Houston Division, GSM agrees to waive venue in that district.

The facts and procedure of this case are very similar to *AAMP of Fla. v. Audionics Sys.*, 2013 U.S. Dist. LEXIS 36842 (M.D. Fla. Mar. 18, 2013). Plaintiff (AAMP) accused defendant (Crux) of patent infringement in August 2012. *Id.* at *3. On December 17, 2012, Crux filed a declaratory judgment action of non-infringement and invalidity of the patents in the U.S. District Court for the Central District of California. *Id.* Ten days later, on December 27, 2023 AAMP filed suit for patent infringement against Crux in the Middle District of Florida. *Id.* at *2-3. In the Florida action, Crux filed a motion to dismiss the patent infringement action, or in the alternative, to transfer the case to California under the first-filed rule. *Id.* at *3. The parties did not dispute that a substantial overlap existed between the two actions, since both cases arose out of the same patent infringement issue involving identical parties. *Id.* *5. AAMP argued <u>not</u> that the action differs, but rather that Crux's California action was filed in bad faith effort to deprive AAMP of its choice of forum. *Id.*

The Florida court recognized that Crux's filing of a declaratory judgment case in anticipation of suit in another forum "is an equitable consideration which the court

may take into account in determining whether compelling circumcenters exists to warrant an exception to the first-filed rule." *Id*. at *5-6. Nevertheless, the Court held that whatever merit there may be in AAMP's argument for an "anticipatory declaratory judgment" exception to the first-filed rule, that is an issue which it had no opinion. *Id* at *6. "[T]his Court finds that such a determination should be reached by the" California court as the first-filed court. *Id*. The Florida court determined that once it found a likelihood of substantial overlap between the two suits, it was no longer up to it in the second-filed suit to resolve the question of whether both should be allowed to proceed. *Id*. at *7. "Rather, 'the proper course of action is for the court to **transfer the case to the first-filed court** to determine which case should . . . proceed.'" *Id*. (internal citations omitted) (emphasis added). The Florida court transferred the case to the California court to let it "decide whether AAMP's Florida action should be allowed to proceed or whether it should be consolidated with the California action, as well as all issues regarding jurisdiction and venue." *Id*. at *8. Just like the court in *AAMP of Fla., Inc.*, this Court should find that GSM's Texas suit for declaratory judgment of noninfringement and invalidity was filed first, that there is a substantial overlap of parties, patents, and accused products in both suits, and order the severance and transfer of RCHB's claims to the Texas suit.

### D. In the alternative, the claims against GSM should be severed under Fed. R. Civ. P. 21 and transferred under 28 U.S.C. § 1406(a) to the Northern District of Texas, Dallas Division.

In the alternative, if the Court does not dismiss or transfer RCHB's claims to the Texas suit based on the first-filed rule, then GSM moves to sever under Fed. R. Civ. P. 21 and transfer RCHB's claims to the Northern District of Texas, Dallas Division, pursuant to 28 U.S.C. § 1406(a), because venue is not proper in this district under § 1400(b) as briefed above. *See* IV.B, *supra*. Section 1406(a) is the appropriate statute to affect the transfer, because venue was wrong in this district when RCHB filed this suit. 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a **case laying venue in the wrong division** or district shall dismiss, or if it be in the interest of justice, **transfer such case to any district or division in which it could have been brought**.) (emphasis added).

GSM's current headquarters is in Irving, Dallas County, Texas, which is located in the Northern District of Texas, Dallas Division. *See* Mann Decl. ¶ 7. GSM has allegedly committed acts of infringement (e.g., by offering to sell or selling accused ground hunting blinds) and has a regular and established place of business in the Northern District of Texas, Dallas Division. *See* 28 U.S.C. § 1400(b); Mann Decl. ¶¶ 7, 15. Therefore, venue is proper under §1400(b) in the Northern District of Texas, Dallas Division, and GSM requests severance and transfer of the claims to this district **as a last alternative**.[10] *See* Cabello Decl. ¶ 5, Exhibit B (Dkt. 54, Order, Wisconsin suit) (ordering severance of RCHB's patent infringement claims against DBR under

---

[10] As set forth in IV.C, *supra*, GSM first requests RCHB's claims be transferred to the Texas suit under the first-filed rule. Only should this Court deny transfer of the claims to the Texas suit, does GSM request transfer of the claims to the Northern District of Texas, Dallas Division.

Fed. R. Civ. P. 21 and transferring them to the N.D. of Ohio under § 1406(a), because venue was improper in the W.D. of Wisconsin as to DBR, since DBR did not maintain a regular and established place of business in the W.D. of Wisconsin). Similar to the approach in the Wisconsin suit against DBR, this Court should sever RCHB's patent infringement claims (Counts I and II) under Fed. R. Civ. P. 21, because GSM has been improperly joined in this case, due to improper venue in this district under § 1400(b), and then transfer the claims to the Northern District of Texas, Dallas Division, where venue is proper under § 1400(b). *See* Mann Decl. ¶¶ 7, 15.

## V. CONCLUSION

Under Fed. R. Civ. P. 12(b)(2), the Court should grant GSM's motion to dismiss, because GSM did not waive its right to challenge personal jurisdiction under NDAs it did not sign with RCHB and because the exercise of personal jurisdiction over it would be unreasonable in violation of due process. Under Fed. R. Civ. P. 12(b)(3), the Court should grant GSM's motion to dismiss, because GSM did not waive its right to challenge venue under NDAs it did not sign with RCHB and because venue is improper in this district. If the claims against GSM are not dismissed for any reason, the Court should sever and transfer them to the Southern District of Texas, Houston Division in GSM's Texas suit under the first-filed rule, and in the last alternative, severed and transferred to the Northern District of Texas, Dallas Division.

Dated: December 11, 2023

Respectfully submitted,

*/s/ James A. Boatman, Jr.*

**James A. Boatman, Jr.**

**BOATMAN RICCI**
Florida Bar No. 130184
Email: courtfilings@boatmanricci.com
3021 Airport-Pulling Rd North, Suite 202
Naples, Florida 34105
Tel: 239.330.1494

**J. David Cabello**
*Attorney-in-charge*
Texas Bar No. 03574500
Email: David@CHZFirm.com
CABELLO HALL ZINDA, PLLC
801 Travis Street, Suite 1610
Houston, TX 77002
Tel.: 832.631.9990
Fax: 832.631.9991

*Attorneys for Defendant Good Sportsman Marketing, LLC*

## LOCAL RULE 3.01(g) CERTIFICATION

The undersigned counsel for Good Sportsman Marketing, LLC conferred with counsel for Rugged Cross Hunting Blind LLC, Robert Wolter, on December 7, 2023 via telephone, regarding the filing of the Motion. The parties were unable to agree on the resolution of any part of the Motion. Mr. Wolter indicated that Rugged Cross Hunting Blind, LLC is opposed to the Motion.

*/s/ J. David Cabello*
J. David Cabello

## CERTIFICATE OF SERVICE

The undersigned certifies that on December 11, 2023, counsel for Good Sportsman Marketing, LLC initiated service of the foregoing document via the Court's ECF system.

*/s/ James A. Boatman, Jr.*
James A. Boatman, Jr.