**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**RUGGED CROSS HUNTING BLINDS, LLC**

**Plaintiff,** **CASE NO. 8:23-cv-02289-WFJ-UAM**

**v.**

**GOOD SPORTSMAN MARKETING, LLC, HADLEY DEVELOPMENT, LLC, and TRU-VIEW, LLC,**

**Defendants.**
______________________________/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT GOOD SPORTSMAN MARKETING, LLC'S MOTION TO DISMISS AND MOTION TO SEVER AND TRANSFER IN THE ALTERNATIVE**

## I. INTRODUCTION

Rugged Cross Hunting Blinds, LLC (hereinafter "RCHB" or "Plaintiff"), by and through its undersigned attorneys, hereby files this Response in Opposition to Defendant Good Sportsman Marketing, LLC's (hereinafter "GSM" or "Defendant") Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue and Motion to Sever and Transfer Under First-Filed Rule Or Transfer Under § 1406(a) in the Alternative as follows:

## II. LEGAL STANDARD

### a. Personal Jurisdiction

The Federal Circuit developed a three-factor test for determining specific jurisdiction in which a court must determine whether: "(1) the defendant purposefully directed its activities to the forum State; (2) the claims arise out of or relate to those activities (collectively, the minimum contacts prong); and (3) the assertion of jurisdiction is reasonable and fair." *NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371, 1376 (Fed. Cir. 2017) (internal citations omitted). If the plaintiff establishes the first two factors, the defendant then has the burden on the third factor to show why the assertion of personal jurisdiction would not comport with fair play and substantial justice. *New World Intl, Inc. v. Ford Glob. Techs., LLC*, 859 F.3d 1032, 1037 (Fed. Cir. 2017).

### b. Venue

A civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business. 28 U.S.C.S. § 1400(b). The Federal Circuit determined that the "regular and established place of business" requirement in 28 U.S.C.S. § 1400(b) should be analyzed under a three-prong test: (1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant. *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).

## III. ARGUMENT

### a. This Court Has Specific Personal Jurisdiction Over Defendant GSM

#### i. GSM Has Established Minimum Contacts with Florda and the Middle District of Florida

GSM appears to concede that it has established minimum contacts with Florida, as it does not argue otherwise, and only challenges the second prong of the personal jurisdiction inquiry. GSM clearly has purposefully availed itself of the privilege of conducting activities within this forum State by exploiting its market to sell goods to Florida consumers. GSM admits that it "operates nationally" and sells its products, "including some models of ground hunting blinds at issue in this lawsuit," through brick and mortar retail stores such as Bass Pro Shops and Walmart, including through their respective websites. *See* Dkt. 19 at 12; Dkt. 19-1, *Mann Decl.* ¶ 14. GSM does not deny selling and having sold its products to Florida residents. *Id.* at ¶ 15. In addition to selling its products physically in Florida through brick and mortar stores[1], GSM's products can be purchased online by Florida residents and shipped to Florida via its brick and mortar customers' websites[2]. Since GSM has sold and continues to sell its infringing products to Florida residents and ships its products to Florida addresses, including physical stores in Florida, GSM meets the minimum contacts prongs of the

---

[1] *See* Ex. C-1 (Screenshot of Walmart website showing Walmart has 386 retail units in Florida); *See also* Ex. C-2 (Screenshots of Bass Pro Shop/Cabela's website showing there are 12 Bass Pro Shops in Florida, 5 of which are located in the Middle District of Florida).
[2] *See* Exhs. C-3 and C-4.

personal jurisdiction inquiry. *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 256, 137 S. Ct. 1773, 1776 (2017).

**ii. Establishing Jurisdiction in Florida Is Reasonable and Fair and Therefore Comports with Due Process**

The sole question, then, as to personal jurisdiction is whether Florida's action on this case comports with due process, and it does. The five factors that the Supreme Court set forth in determining whether the exercise of jurisdiction would comport with fair play and substantial justice are: 1) "the burden on the defendant," 2) "the forum State's interest in adjudicating the dispute," 3) "the plaintiff's interest in obtaining convenient and effective relief," 4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and 5) the "shared interest of the several States in furthering fundamental substantive social policies." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S. Ct. 2174, 2184 (1985) (internal citations omitted).

GSM does not convincingly frame their burden in this case as "heavy." GSM's attempt to portray RCHB and by extension, the Seaton's, as nebulously defined "patent trolls" fails in light of the fact that the Seaton's invented the technology underlying the '535 Patent and practice their invention to this day. The value and validity of their invention has been recognized by the industry and has led to numerous licensing agreements with several companies in the outdoor sporting industry. Dkt. 19-6, Ex. A at 21-22. RCHB's transition to a licensing-based company was a natural result of the high demand and industry buzz that the Seatons' patents generated. GSM would have the court believe that starting from the ground up and having to scramble

to protect their patent rights as small fish in a large pond, somehow makes the Seaton's undeserving of protecting their invention. Dkt. 19 at 12.

GSM also neglects to tell the Court why litigating against patent trolls, as opposed to any other entity, is relevant to its burden under this factor. What little GSM does argue, amounts to it allegedly not having a presence in Florida, and therefore having to travel to Florida is expensive and time-consuming. *Id.* at 13. The countervailing point to this argument is that such a burden is reciprocal for RCHB should this case be transferred elsewhere or dismissed. In fact, such expenses would be *more burdensome* for RCHB in other forums because GSM "operates nationally, with over 40 brands," has commercial reach that extends nationwide, and has greater economic means than RCHB, which is merely a "two-person business." *Id.* at 11-12. GSM's assertions regarding its burden in this case are not supported by evidence – in Doug Mann's declaration or elsewhere – and even its own argument is speculative. Dkt. 19-1, *Mann Decl.*; Dkt. 19 at 13. ("…litigation expenses that **may** amount to millions of dollars.) (emphasis added). This Court should find GSM's unsupported argument here unpersuasive. *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1367 (Fed. Cir. 2006) (Court finding a general assertion of hardship under first *Burger King* factor, without supporting evidence, as unpersuasive.).

GSM's argument under the second *Burger King* factor is without merit. Florida has a strong interest in litigating this case because it involves infringing products that were sold in this State, and Florida has a strong motivation to protect its citizens from

the ills of patent infringement. *Pureterra Naturals, Inc. v. Cut-Heal Animal Care Prods.*, 674 F. Supp. 2d 1294, 1299 (M.D. Fla. 2009). GSM does not dispute the fact that RCHB is headquartered in Florida, that the Seaton's are Florida citizens who reside in Florida, or that GSM has sold its products, including those at issue in this suit, to Florida residents in Florida. These facts indicate this factor should be found in favor of RCHB.

Instead, GSM argues that the Florida legislature's intent to curb bad faith patent infringement claims is somehow applicable here, despite GSM making no attempt to illustrate what "bad faith" means in the context of this statute, show that RCHB's suit has been brought in bad faith (stating only, "*may* have been brought in bad faith"), or evidence RCHB having engaged in any of the activities captured under Fla Stat. § 501.993, which deals strictly with the sending of demand letters. Dkt 19 at 14. Also, GSM conveniently neglects to mention that patent enforcement not made in bad faith is explicitly exempted. FL Stat. § 501.991(2) ("Patent holders have a legitimate right to enforce their patents. The Legislature does not wish to interfere with good faith patent litigation or the good faith enforcement of patents."); *see also* FL Stat. §501.991(4)(a); FL Stat. §501.991(4)(c). Therefore, GSM's argument here is inapplicable and this Court should find this factor in favor of RCHB.

The third *Burger King* factor falls squarely in favor of RCHB. Plaintiff has an interest in protecting its valuable patent against infringement, and "[e]conomic loss occurs to the patent holder at the place where the infringing sale is made because the patent owner loses business there." *Pureterra Naturals, Inc.* 674 F. Supp. At 1299. Even

if witnesses and evidence regarding the infringing products' design and manufacture are located elsewhere, such products were distributed in this State, where the witnesses and evidence regarding the distribution of the products are located. *Id*. This factor is found in favor of Plaintiff, where Plaintiff is a resident of the forum State. *Breckenridge Pharm., Inc.,* 444 F.3d at 1368. Here, RCHB is a Florida-based company organized under the laws of Florida and residing in Florida. Dkt 1, *Plaintiff's Complaint*, ¶ 2. Neither party disputes that RCHB is in Florida. Dkt 19 at 14. RCHB is a two-brother family venture with no employees, and both Seaton brothers reside in Florida with their families. Dkt. 19-5, Ex. B, at ¶¶4-5, 15; *See also* Ex. A at ¶¶4-5. Also, **all of** RCHB's physical offices, employees, agents, and documents are located in Florida. Ex. A at ¶5. Therefore, litigating anywhere other than Florida would impose a substantial financial and temporal burden on the day-to-day operations of RCHB in its home state of Florida. As a small family business, RCHB does not have a budget dedicated to enforcing its patent rights throughout the nation in different forum states, its two owners do not routinely travel to different forum states for such a reason, and imposing such expenses on them would divert funds that would otherwise go towards RCHB's general business operations in Florida. Ex. A at ¶6. GSM is correct to point this out, but incorrect in asserting that such concerns are vitiated merely because RCHB has been forced to enforce its valid patent rights by filing suit in one other

forum[3]; if anything, RCHB's interest in obtaining convenient and effective relief in Florida is increased now that RCHB is forced to litigate on multiple fronts and away from its home State. Dkt. 19 at 14. GSM's statement that "RCHB has little interest in filing suits in Florida" is nonsensical, considering the instant case *was filed in Florida*. Whether RCHB's counsel will "require travel outside of Florida to take depositions of GSMs employees and officers" also has little or no bearing on an analysis of this factor, because should this case be transferred, the additional cost of obtaining local counsel, the cost for the Seaton's to have to travel elsewhere for trial, and the potential for disruption of their two-man business as a result of being forced to litigate outside of Florida, all greatly outweigh such consideration.

Regarding the fourth *Burger King* factor, RCHB notes that the communications with GSM were made in good faith to settle the patent dispute *without court intervention*. This is evidenced by RCHB's repeated offers to license its patents[4] to GSM rather than engage in lengthy and expensive litigation as is happening currently. The Federal Circuit has regarded the *attempt* to settle a dispute prior to litigation as a point in favor of the plaintiff under this factor in similar proceedings. *See Red Wing Shoe Co. v.*

---

[3] GSM misleads the Court in its argument. GSM neglects to mention that both the Wisconsin and Ohio cases originated from a singular suit that was filed in Wisconsin (*Rugged Cross Hunting Blinds, LLC v. FeraDyne Outdoors, LLC and DBR Finance, Inc., f/k/a Outdoor Product Innovations, Inc.*, No. 3:22-cv-00690, W.D. Wis.). The claims against DBR Finance, Inc. were severed and transferred by court order to Ohio (*Rugged Cross Hunting Blinds, LLC v. DBR Finance, Inc.* No. 1:23-cv-02231, N.D. Ohio). Dkt. 1 at ¶37; Dkt. 19-4, Ex. B.

[4] RCHB sent GSM five correspondences regarding the '535 Patent dated August 29, 2022, October 10, 2022, November 28, 2022, May 19, 2023, and July 12, 2023. Each correspondence contained language offering to resolve the dispute through licensing. *See* Exhs. B-1 at 2; B-2 at 9; B-3 at 6; B-4 at 2; B-6 at 3.

*Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998); *See also Apple Inc. v. Zipit Wireless, Inc.*, 30 F.4th 1368, 1381 (Fed. Cir. 2022) GSM's first-filed argument is also undercut for reasons enumerated later in this Response[5].

This same reasoning extended to the fifth *Burger King* factor in *Apple*, where that court considered that "the settlement-promoting policy underlies this factor as well because 'social interests of society are advanced when disputes are settled out of court.'" *Id*. at 1381. That court also ultimately found this factor in favor of the patentee. *Id*. ("…our conclusion as to the fourth *Burger King* factor would apply with equal force to the fifth."). Therefore, this Court should find the same in the instant case.

Since GSM has made no showing that "[f]our of the five Burger King factors weigh strongly in favor of GSM" – much less one – GSM has not established this Court's exercise of jurisdiction would be so unreasonable or unfair so as to be unconstitutional. As such, GSM's request that the instant case should be dismissed under Fed. R Civ. P. 12(b)(2) should be denied.

**b. Venue Is Proper In the Middle District of Florida**

**i. GSM Is Bound By the Forum Selection Clauses in the NDAs Between Tru-View and Hadley and RCHB**

When a court resolves a motion to dismiss based on improper venue without an evidentiary hearing, "the plaintiff must present only a prima facie showing of venue" to survive the motion. *Home Ins. Co. v. Thomas Indus., Inc.*, 896 F.2d 1352, 1355 (11th

[5] RCHB's briefing on the applicability of the first-filed rule is set forth in Section III(b)(iii), *infra*.

Cir. 1990) (internal quotation marks omitted). Even in patent cases, where 28 U.S.C. § 1400(b) is the "exclusive provision" controlling venue, valid forum-selection clauses can override the statute. *Am. Registry, Ltd. Liab. Co. v. Castle Connolly Med. Ltd.*, No. 9:23-cv-80654-MIDDLEBROOKS, 2023 U.S. Dist. LEXIS 148358, at *6 (S.D. Fla. Aug. 23, 2023). A valid forum-selection clause may bind a non-signatory if it was foreseeable that the non-signatory would be bound. *Lipcon v. Underwriters at Lloyd's*, 148 F.3d 1285, 1299 (11th Cir. 1998). Courts have examined foreseeability in such cases based on whether the non-signatory was closely related to the agreement, whether a signatory to the agreement had apparent or express authority to sign on the non-signatory's behalf, whether the non-signatory was a third-party beneficiary of the agreement, and whether a principal-agent relationship existed between a signatory and the non-signatory. *Terraspan, LLC v. Rave, LLC*, Civil Action No. 3:12-CV-0816-K at *10-11 (N.D. Tex. Dec. 10, 2012); *Truinject Corp. v. Nestle Skin Health S.A.*, No. 19-592-LPS-JLH at *25 (D. Del. Dec. 13, 2019).

GSM does not dispute RCHB's assertions that Tru-View and Hadley manufacture the infringing hunting blinds, sell them to GSM, and had agreed to indemnify and defend GSM with respect to RCHB's claim for patent infringement at least as to the infringing blinds. Dkt. 1 at ¶¶5-7. Furthermore, GSM does not contest the *validity* of the forum-selection clauses in the Non-Disclosure Agreements ("NDAs") at issue, nor dispute that Hadley and Tru-View had the authority to enter into settlement negotiations on behalf of themselves *and their customers* when the NDAs

were signed, arguing merely that the NDAs do not apply to GSM because GSM did not sign them. *Id.* at ¶¶34, 38; Dkt. 19 at 8-9.

In fact, Tru-View's counsel informed RCHB that it had the authority to do so in an email dated March 6, 2023, explicitly stating that the settlement negotiations subject to the NDA signed by RCHB and Tru-View on February 20, 2023 covered GSM. Dkt. 26, Ex. A-7 at 1. Furthermore, GSM was closely related to the NDAs not just because it was a customer of a signatory, but also because Hadley and Tru-View had agreed to indemnify and defend GSM in patent infringement litigation arising from their sale of infringing products to GSM. GSM was a third-party beneficiary of the NDAs because any settlement reached would have prevented further litigation as between itself and RCHB, saving GSM from further litigation costs. GSM was therefore tied inextricably to any settlement arising from the NDAs, and it was foreseeable that it would be bound to the provisions of said NDAs, including the forum selection clauses therein.

**ii. RCHB Requests Venue Discovery Because GSM Has At Least One Director Living In This District And Had Previously Acquired Brand Company Steelshad That Originated in this District**

Allowing limited venue discovery is a viable alternative to ruling on venue motions where the factual record has not yet progressed due to the early stage of litigation and is appropriate where a party seeking discovery can identify with some specificity the information relevant to venue that discovery may unearth. *See* St. Croix

Surgical Sys., LLC v. Cardinal Health, Inc., No. 2:17-CV-00500-JRG-RSP, 2018 U.S. Dist. LEXIS 230979, at *4 (E.D. Tex. Feb. 28, 2018).

GSM does not deny that it has committed acts of infringement in this District, and it does not reside here, so the sole inquiry under the patent infringement venue statute is whether GSM has a "regular and established place of business" in the Middle District of Florida. 28 U.S.C. § 1400(b). Despite claiming that it has no physical offices, employees, agents, or documents located in Florida, there are indications that this is untrue. Dkt. 19 at 13; Dkt. 19-1 at ¶¶ 9, 10. Rich Krause, a GSM affiliate serving on GSM's board of directors and audit committee for the last seven years, lists his business address on LinkedIn as Bonita Springs, FL[6], which is located in the Middle District of Florida. GSM has also previously hired and is currently hiring employees for remote work positions[7], with no limitation as to where such remote workers can reside and from where they may conduct GSM business. Furthermore, GSM acquired Steelshad[8], a fishing company that was originally owned by Steve Niemoeller[9] and that had its principal place of business in the Middle District of Florida[10].

---

[6] *See* Ex. C-5.

[7] *See* Ex. C-6 (Showing current GSM job listing for "Brand Manager" under "Remote Worker"); Exh. C-7 (Archived GSM job listing from May 6, 2023 listing "Senior Copywriter" under "Remote Worker – N/A").

[8] *See* Exh. C-8; *See also* Exh. C-9.

[9] *See* Exh. C-10 (Showing Steve Niemieller as Steelshad Fishing Company's "Business Owner" from January 2008 through January 2017); *see also* Ex. C-11 at 2 (Article stating original Steelshad started by B.A. Gills and Steve Niemoeller).

[10] *See* Exh. C-12 (Florida Dept. of State website showing STEELSHAD.COM, INC. incorporated in Florida in 2008 with principal address in Deland, FL, and listing Blake Gills and Steve Niemoeller as its officers).

RCHB requests limited venue discovery to ascertain whether GSM employs remote workers who reside in and conduct GSM business out of this District, as well as whether their homes and/or offices have been ratified by GSM. *See Medallia Inc. v. Echospan, Inc.*, No. 3:22-cv-1243-MMH-LLL, 2023 U.S. Dist. LEXIS 146558, at *11 (M.D. Fla. Aug. 21, 2023). RCHB also requests discovery as to whether GSM, having acquired at least one company that was founded in Florida and had its principal place of business in this District, maintains vestiges of that company or any other acquired company in this District, such as offices, facilities, or storage, through which it conducts business or maintains a principal-agent relationship. *In re Google LLC*, 949 F.3d 1338, 1345 (Fed. Cir. 2020). RCHB also requests discovery as to any and all communication and agreements between GSM and its suppliers Tru-View and Hadley regarding Tru-View and Hadley's duty to indemnify and defend GSM, as well as to any authorization to negotiate and enter into settlement agreements on GSM's behalf regarding infringement of RCHB's patents.

**iii. GSM's First-To-File Argument Fails In Light of Differences Between the First-Filed and Second-Filed Cases, and Compelling Circumstances**

GSM glosses over the substantive differences that exist between its first-filed case in Texas, and RCHB's instant second-filed case here. GSM's first-filed suit includes an additional count of tortious interference with contract against RCHB, involving GSM's "existing contractual relationships with Walmart and Bass Pro Shops," that is absent here. Dkt. 19-3, Exhibit A at ¶¶ 36-40. What does exist in the second-filed suit, however, are **two codefendants**, Hadley Development, LLC, and

Tru-View, LLC, that are not parties to the first-filed suit. The existence of the NDAs between RCHB and Hadley and Tru-View, as well as the necessary exploration of GSM's relationships with Hadley and Tru-View, are elements unique to the second-filed suit that substantively distinguish the two cases.

Furthermore, a district court may refrain from applying the first-filed rule where "compelling circumstances" and equitable considerations exist. *Chaban Wellness Ltd. Liab. Co. v. Sundesa, Ltd. Liab. Co.*, No. 15-cv-21497, 2015 U.S. Dist. LEXIS 97511, at *6 (S.D. Fla. July 27, 2015). "Compelling circumstances include bad faith negotiations, an anticipatory suit, and forum shopping." *Vyas v. Taglich Bros., Inc.*, No. 8:22-cv-1515-CEH-JSS, 2023 U.S. Dist. LEXIS 161585, at *7 (M.D. Fla. Sep. 12, 2023). Equitable factors, such as superiority of the second-filed action's forum in resolving the issues, and the convenience of the parties and witnesses, are also considered. *Catermefit, Inc. v. Catered Fit Corp.*, No. 8:15-cv-326-T-17MAP, 2015 U.S. Dist. LEXIS 183841, at *4 (M.D. Fla. Apr. 16, 2015).

Even if this Court finds that the first-filed rule is applicable, it should decline applying it because compelling circumstances exist. GSM believed that litigation from RCHB was imminent, and in seeking to get an unfair head start, filed its anticipatory request for declaratory judgment in its preferred forum in Texas. GSM characterizes RCHB's good faith attempts to settle out of court, spanning almost three years, as "**amplified** threats of litigation," therefore admitting that it believed RCHB was

becoming increasingly serious in its correspondences[11]. Dkt. 19 at fn. 9. (emphasis added). In their last pre-suit correspondence to RCHB, dated June 20, 2023, GSM ominously stated, "[i]f RCHB brings an action against GSM **or its distributors** on the '535 patent, we understand that GSM intends to vigorously defend its position and will seek its attorney's fees in doing so." Ex. B-5 at 16 (emphasis added). RCHB sent its last pre-suit correspondence to GSM regarding the '535 Patent on July 12, 2023. Dkt. 1 at ¶ 45; Ex. B-6. After RCHB sent correspondence to Bass Pro Shop on August 24, 2023, GSM immediately filed its Texas suit eleven days later, on August 31, 2023. Ex. B-7; Dkt. 1 at ¶46. Evidently, GSM believed that litigation from RCHB was imminent because RCHB had reached out to GSM's distributors, and therefore GSM rushed to file its suit first. Furthermore, GSM was aware prior to filing its Texas suit that RCHB had previously filed suit in Wisconsin against another infringer, FeraDyne Outdoors, LLC for infringement of the same '535 Patent, so it believed RCHB's "amplified threats" were serious. Dkt. 19-3, Exhibit A, ¶ 22; *Chaban Wellness Ltd. Liab. Co. v. Sundesa, Ltd. Liab. Co.*, No. 15-cv-21497, 2015 U.S. Dist. LEXIS 97511, at *9 (S.D. Fla. July 27, 2015) ("Plaintiff knew that Defendant's threat of imminent litigation was serious because Plaintiff was aware of other lawsuits Defendant had filed under similar circumstances.").

[11] RCHB merely acknowledges GSM's own mental impressions of the correspondences between the two parties. RCHB does not admit nor concede GSM's characterization of the correspondences.

GSM also engaged in forum shopping when it first-filed its Texas suit in the Southern District of Texas, Houston Division. Despite being headquartered in Irving, Texas, which is in the Northern District of Texas, and having a "significant number of GSM's executives, high-level employees, and documents" in that office, GSM chose to file suit in Houston, almost four hours away. Dkt. 19-1 at ¶7-8. Nor, too, can GSM make a genuine argument that venue in the first-filed case is actually proper in the Southern District of Texas[12]. GSM states that venue is proper in the District of Delaware, where it resides. Dkt. 19 at 17. Despite first-filing in the Southern District, GSM requests this Court to sever and transfer, in the alternative, to the Northern District of Texas. *Id.* at 21. This is a tacit admission that venue in the Southern District is improper, and evidenced through GSM's request to **waive venue in the Southern District of Texas** if RCHB's claims are transferred there as a result of the first-filed rule. *Id.* at 23-24. RCHB can only surmise that GSM first-filed in the Southern District, despite the impropriety, because GSM's counsel is located in Houston[13] and therefore it would be more convenient to litigate there as opposed to the Northern District, as well as a tactical advantage because GSM's counsel is more familiar with the judges in that District. Though GSM filed first in Houston, a transfer of the instant case to a

[12] In that case, RCHB filed its Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue and Motion to Transfer in the Alternative on November 7, 2023. *Good Sportsman Marketing, LLC v. Rugged Cross Hunting Blinds, LLC*, No. 4:23-cv-3243, S.D. Tex., Houston Division. Briefing on RCHB's Motion is complete and the parties are awaiting a ruling.

[13] *See* Ex. B-5 at 1. (Correspondence from GSM counsel to RCHB counsel dated June 20, 2023).

blatantly improper venue, where such case may have to be transferred again, does not support the interests of judicial economy nor efficiency underlying the first-to-file rule.

This Court should consider other equitable factors as well in deciding whether it should apply said rule. For example, this Court is better equipped to explore the unique issues stemming from the relationship between GSM and its suppliers Hadley and Tru-View, as applied to the venue provisions in the NDAs, because all parties relevant to the issue can litigate in one court, as opposed to allowing GSM to split off and litigate in Texas apart from its codefendants. Furthermore, as a two-man family business, RCHB has significantly less time and means for traveling to different forums to litigate, as outlined previously, and therefore the burden of litigating all of these issues in multiple forums weighs heaviest on RCHB. Ex. A at ¶6.

The instant case is distinguishable from *AAMP of Fla. v. Audionics Sys.*, 2013 U.S. Dist. LEXIS 36842 (M.D. Fla. Mar. 18, 2013). In that patent infringement case, the defendant, Crux, resided in the Central District of California. *Id.*, Dkt. 10 at 11. The Central District was therefore a proper venue where the plaintiff AAMP could have brought their patent infringement suit against Crux, under 28 U.S. Code § 1400(b). **It was also the same venue where Crux first-filed its declaratory judgment action**. *Id.*, Dkt. 10 at 1. Crux explained that its relevant documents and facilities were located in that District. *Id.*, Dkt. 10 at 12. Crux also alleged that AAMP maintained various facilities in that District. *Id.*, Dkt. 10 at 12-13. That court noted that the parties did not dispute the existence of substantial overlap between the California and Florida actions.

*Id*. at *5. Whether any equitable factors supporting an exception to the first-to-file rule existed, other than the anticipatory nature of Crux' litigation, was not explored. Therefore, judicial comity and efficiency were conserved, and convenience of the witnesses was balanced, through the transfer of the patent infringement case to the Central District of California, "in which it could have been brought." *Id*. at *8.

GSM is not so fortunate here. GSM first-filed its declaratory judgment action in the Southern District of Texas, despite being headquartered in the Northern District of Texas and residing in the District of Delaware. Dkt. 19 at 17, 23. GSM does not allege nor evidence having any offices, documents, or a regular and established place of business in the Southern District of Texas, so GSM's first-filed venue is not one where the instant action "could have been brought" and any convenience to GSM in litigating there as opposed to the Middle District of Florida is greatly diminished. RCHB has no contacts with the Southern District of Texas. Dkt. 19-5 at ¶¶ 3, 6-10, 13-14, 16. Finally, any overlap in the instant case and the Texas action should be weighted against the substantive differences between the cases, as well as the previously briefed equitable factors indicating compelling circumstances exist sufficient to warrant an exception to the first-to-file rule.

**c. GSM's Argument for Severing and Transferring In the Alternative is Not Well Taken And Should Be Denied**

GSM's request to sever and transfer RCHB's claims against it is yet another example of GSM attempting to gain an unfair advantage through forum shopping. Making no attempt to balance the equities, GSM merely states that the Northern

District of Texas is a proper venue in which this case could have been brought. Dkt. 19 at 23. On the other hand, granting GSM's request would impose massive hardship on RCHB, which already has to litigate GSM's declaratory judgement action in the improper venue of the Southern District of Texas despite having no contacts with Texas. GSM's request here, then, is an undisguised attempt at gaining a slight advantage at RCHB's considerable expense, because any issue of convenience GSM *could have but did not assert* is neutralized by the fact that it first-filed in an entirely different District altogether. As such, transfer would not be in the interest of justice and GSM's request should be denied.

## IV. CONCLUSION

For the reasons stated above, RCHB respectfully requests that the Court dismiss Defendant's Motion to Dismiss in this matter, or, in the interest of justice, grant RCHB's request for limited venue discovery and stay such proceedings until that discovery has been completed.

DATED this 2nd day of January, 2024.

Respectfully submitted,

Wolter Van Dyke Davis PLLC
1900 Summit Tower Blvd, Suite 140
Orlando, Florida 32810
Telephone: (407) 926-7706
Facsimile: (407) 926-7720
E-mail: adavis@savvyiplaw.com
E-mail: rwolter@savvyiplaw.com
***Attorneys for Plaintiff***

*/s/ Robert L. Wolter*
Robert L. Wolter

Florida Bar No: 906344
Amber N. Davis
Florida Bar No: 0026628
David Yau
Florida Bar No: 1018284

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the above has been filed through the Court's CM ECF electronic filing system this 2nd day of January, 2024, which will send notice by electronic mail to: Ryan T. Santurri, Esquire (rsanturri@allendyer.com), Allen, Dyer, Doppelt & Gilchrist, P.A., 255 South Orange Avenue, #1401, Orlando, FL 32801; Scott R. Brown, Esquire (sbrown@hoveywilliams.com), Hovey Williams LLP, 10801 Martin Blvd., Suite 1000, 84 Corporate Woods, Overland Park, Kansas 66210; James A. Boatman, Jr., Esquire (courtfilings@boatmanricci.com); Boatman Ricci, 3021 Airport-Pulling Road North, Suite 202, Naples, FL 34105; and, J. David Cabello, Esquire (david@chzfirm.com); Cabello Hall Zinda, PLLC, 801 Travis Street, Suite 1610, Houston, TX 77002.

*/s/ Robert L. Wolter*
Attorney