UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| **RUGGED CROSS HUNTING BLINDS, LLC,** <br><br> *Plaintiff,* <br> **vs.** <br><br> **GOOD SPORTSMAN MARKETING, LLC, HADLEY DEVELOPMENT, LLC and TRU-VIEW, LLC,** <br><br> *Defendants.* | § § § § § § § § § § § § | **CASE NO. 8:23-cv-02289-WFJ-UAM** <br><br> **JURY DEMANDED** |

**DEFENDANT GOOD SPORTSMAN MARKETING, LLC'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

Defendant Good Sportsman Marketing, LLC ("GSM") files this Reply to Plaintiff Rugged Cross Hunting Blind, LLC's ("RCHB") Response in Opposition (Dkt. 27) to Motion to Dismiss (Dkt. 19).

# I. ARGUMENT

## A. Venue is improper in the Middle District of Florida.

### 1. GSM is not bound by the forum selection clauses in the NDAs between RCHB and Hadley and Tru-View that GSM never signed; RCHB's patent infringement claims fall outside the scope of the NDAs; there is no agency relationship between GSM and Hadley / Tru-View; and GSM is not a foreseeable third-party beneficiary to the NDAs.

The NDAs at issue, which GSM did **<u>not</u>** sign, have a WHEREAS clause stating, "[T]he Parties are exploring the possibility of a business relationship including a license under the RCHB Patents" and then broadly defines the Purpose as "engag[ing] in discussions concerning a potential business relationship." Dkt. 1-3 (NDA with Hadley); Dkt. 1-4 (NDA with Tru-View). RCHB cites to *Am. Registry, LLC v. Castle Connolly Med. Ltd.*, 2023 U.S. Dist.

LEXIS 148358, at *6 (S.D. Fla. Aug. 23, 2023) for the general proposition that a ***valid*** forum-selection clause can override § 1400(b)'s mandate of exclusive patent venue, which GSM agrees. Dkt. 26 at 14. Here, however, the forum-selection clauses in the NDAs are not valid and not binding on GSM because as a non-signatory to the NDAs, (1) there is no privity of contract;[1] (2) RCHB's patent infringement claims fall outside the scope of the NDAs; (3) no agency relationship exists between GSM with Hadley or Tru-View; and (4) GSM was not a foreseeable third-party beneficiary to the NDAs. Absent valid and binding forum-selection clauses on GSM, § 1400(b) mandatory venue for patent cases controls.

**i. RCHB's patent infringement claims fall outside the scope of the NDAs.**

RCHB a patent license agreement (which covers settlement of patent infringement disputes) versus NDAs (which covers confidential discussions about ***potentially*** settling a patent dispute by entering into a ***future*** patent license agreement)— two very different types of agreements and concepts. Here, the NDAs are not patent license agreements—they are completely devoid of any terms critical to a patent license, for example, royalty rate, permitted uses, payment terms, geographic scope, and duration.[2]

The Federal Circuit's decision in *Kannuu* is on point to show that RCHB's patent infringement claims fall outside the scope of the NDAs, which GSM did not sign.

> [E]ven assuming the parties understood there was a chance they would ultimately enter into a separate intellectual property license agreement down the road, **the issues underlying patent infringement and invalidity fall outside the scope of the NDA**. This is not to say we ignore the realities of the positions of the parties in entering into an NDA. Surely the parties entered into the NDA

---

[1] Lack of privity was previously briefed by GSM and those arguments will not be repeated here. *See* Dkt. 19 at 8-9.

[2] Each NDA states, "The Disclosing Party's disclosure of Confidential Information **shall not** constitute an **express or implied grant** to the Receiving Party **of any rights to or under the Disclosing Party's patents** . . . or **other intellectual property rights**," which further confirms that the NDAs do not grant any patent license. Dkt. 1-3 ⁋ 8; Dkt. 1-4 ⁋ 8 (emphasis added).

> to exchange information in furtherance of some sort of business relationship. The Agreement explains as much. **But that does not mean that future, hoped-for transactions fall within the scope of the Agreement**.

*Kannuu PTY Ltd. v. Samsung Elecs. Co.*, 15 F.4th 1101, 1107 (Fed. Cir. 2021) (emphasis added).

Similarly, relying on *Kannuu*, *Am Registry, LLC* held, "[P]atent rights were **never transferred or licensed** under the [vendor] agreement. Therefore, the **patent infringement claims do not arise out of or in connection with the parties' Agreement**. **Section 1400(b) controls, and venue is not proper with this Court**. *Am. Registry,* LLC, 2023 U.S. Dist. LEXIS at *7 (emphasis added). RCHB has not accused GSM of disclosing any of RCHB's confidential information in violation of the NDAs. RCHB did not need the existence of the NDAs in order to assert patent infringement claims against GSM. Further, there is no patent license agreement between RCHB and GSM. RCHB's patent infringement claims against GSM, do not directly or indirectly arise out of and are not made in connection with the NDAs—particularly since GSM did not sign the NDAs. RCHB's patent infringement claims against GSM, fall outside the scope of the NDAs, and thus, the forum-selection clauses therein, cannot be enforced on GSM.[3] *See Kannuu Pty Ltd.*, 15 F.4th at 1107; *Am. Registry,* LLC, 2023 U.S. Dist. LEXIS at *7.

**ii. No agency relationship exists between GSM and Hadley or Tru-View.**

RCHB has not set forth any evidence to sufficiently establish the existence of a principal-agent relationship between GSM and Hadley or Tru-View, and thus, cannot show that they had apparent or express authority to enter into settlement negotiations for GSM. *See CFTC v. Gibralter Monetary Corp.*, 575 F.3d 1180, 1189 (11th Cir. 2009) ("actual agency, either

---

[3] In filing their motion to dismiss and reply in support, Hadley and Tru-View made a similar argument that RCHB's patent infringement claims against them, fall outside the scope of the NDAs' forum selection clauses, citing to *Kannuu* as well. *See* generally Dkts. 17, 31.

implied or express, requires: (1) consent to the agency by both principal and agent; and (2) the control of the agent by the principal."). GSM-Hadley and GSM-Tru-View never consented to any agency relationship with each other and GSM did not have any control over Hadley and Tru-View. "Apparent authority arises when a third-party reasonably believes that the . . . agent had authority to act on behalf of the principal and that belief can be traced to the principal's own manifestations." *Cacho v. Monevo, Inc.*, 2023 U.S. Dist. LEXIS 207057, at *9 (M.D. Fla. Apr. 14, 2023) (internal quotations omitted). GSM did not engage in any conduct that would lead RCHB to *reasonably* believe that Hadley or Tru-View had apparent authority to enter into settlement negotiations for GSM. Tru-View had no apparent or express authority to enter into settlement negotiations on behalf of GSM in the email dated March 6, 2023 and it did not make such representations.[4] *See* Dkt. 26-8.

**iii. GSM was not a foreseeable third-party beneficiary to the NDAs.**

RCHB argues that GSM was a foreseeable third-party beneficiary of the NDAs, because any settlement reached with Hadley or Tru-View, would have prevented further litigation with RCHB, and thus, GSM was tied to any settlement arising from the NDAs. Dkt. 27 at 11.[5] But settlement of a patent dispute cannot and does not arise out of mere discussions made under an NDA contemplating settling a patent dispute—settlement of a patent dispute arises upon execution of a ***future*** patent license agreement. Again, RCHB

---

[4] As requested by RCHB's counsel, Tru-View's counsel had identified a list of Hadley / Tru-View customers (including GSM) that could potentially benefit from **settlement of the patent infringement claims** against Hadley and Tru-View, assuming that a future **patent license agreement** was eventually executed with Hadley / Tru-View (it never happened) <u>**and**</u> that released their customers, like GSM. The March 6, 2023 email is insufficient to establish that Hadley / True-View had apparent or express authority to enter settlement negotiations on behalf of GSM, especially considering GSM or its counsel were not even copied on the email. *See* Dkt. 26-8.

[5] What RCHB seemingly overlooks is that a patent license with Hadley /Tru-View would have only resolved the alleged infringement issues with respect to products that GSM purchases from Hadley /Tru-View.

conflates a patent license agreement (which serves to settle patent claims against Hadley/Tru-View) versus an NDA (which serves to engage in confidential discussion about potentially settling RCHB's patent claims by entering into a future patent license with them). No patent license between RCHB and GSM exists. Thus, it is <u>not</u> foreseeable that GSM was a third-party beneficiary to the NDAs.

Since the NDAs are not binding on GSM under any theory presented, RCHB has the burden to establish venue in this district under § 1400(b), which it fails to do.

**2. Rich Krause's location, even if in Bonita Springs, FL, does not establish that venue is proper in this district under § 1400(b).**

Rich Krause did not "list his business address on Linkedin as Bonita Springs, FL." Dkt. 27 at 12. Bonita Springs was identified as Mr. Krause' location or residence for purposes of setting up his Linkedin profile—it is not an indication that his ***business address*** is in Bonita Springs. As a ***non-employee member of the Board of Directors*** for GSM, Mr. Krause is not an employee of GSM, and he does not maintain a regular and established office anywhere with GSM. Declaration of Doug Mann ("Mann Decl.") ¶¶ 5-6. Even if Mr. Krause resides in Bonita Springs, that does not satisfy the three-element test to prove GSM has a regular and established place of business in Bonita Springs. GSM does not have any physical offices in Florida, and therefore, no GSM office exists in Bonita Springs. *See* Mann Decl. ¶ 10.

**3. GSM has no remote workers who reside in Florida, and even if it did, the remote workers' home is insufficient to show it is a regular and established place of business of GSM; SteelShad employees and operations are not in Florida.**

Rather than concede that it failed to comport with the patent venue statute set forth in § 1400(b), RCHB desperately seeks evidence of remote GSM employees in this district, citing to GSM job postings for remote workers. Dkt. 27 at 12. *Id.* RCHB appears to argue that a remote worker's work location, which presumably would be at the remote worker's **home**,

makes that home a regular and established place of business of GSM. GSM does not have any remote workers working anywhere in Florida. Mann Decl. ⁋ 11. Further, even if GSM had remote workers in Florida, GSM does not regard the homes of remote workers working from their homes, to be a regular and established place of business of GSM.[6] *Id.* ⁋ 12. Further, upon GSM's acquisition of SteelShad Lure's assets, GSM did not retain any of the SteelShad employees in Florida and never operated SteelShad out of any office in Florida, because GSM relocated SteelShad's assets and business operations to an office in Richardson, Texas. Mann Decl. ⁋⁋ 8-9.

RCHB fails to show that GSM has a regular and established place of business in this district. RCHB's request to take venue discovery and stay these matters, which GSM opposes, is a delay tactic to avoid the inevitable—dismissal for improper venue. If venue discovery is permitted, then RCHB should be taxed with the full cost of such discovery (including GSM's attorneys' fees) when RCHB fails to demonstrate that venue is proper in this district.[7]

**B. GSM's first-filed arguments are valid, despite differences in the first-filed suit and this second-filed suit; no exceptions to first-filed rule apply.**

It is irrelevant that the second-filed suit has two additional parties, Hadley and Tru-View. The fact that GSM's first-filed suit has an extra claim for tortious interference with contract against RCHB is not relevant either. O*pulent Treasures, Inc., v. Ya Ya Logistics, Inc.*,

---

[6] Even if RCHB could identify a remote worker in this district, it will not be able to prove that GSM owns, leases, or rents any portion of said remote worker's home, that GSM had a role in selecting the worker's home locations, that GSM stores inventory at the remote worker's home, or that GSM conditioned employment on the remote workers remaining in this district. *See Medallia Inc. v. Echospan, Inc.*, 2023 U.S. Dist. LEXIS 146558, *14 (M.D. Fla. Aug. 21, 2023); *see also In re Cray Inc.*, 871 F.3d 1355, 1365 (Fed. Cir. 2017) (noting that § 1400(b) "clearly requires that venue be laid where the defendant has a regular and established placed of business, **not where the defendant's employee owns a home in which he carries on some of the work that he does for defendant**.") (emphasis added).

[7] RCHB has not offered a scintilla of evidence to show that GSM has a regular and established place of business in Florida. Accordingly, any request for venue discovery should be summarily denied.

2023 U.S. Dist. LEXIS 92802, at *7 (M.D. Fla. May 26, 2023) ("The asserted claims and parties need not be the same for transfer to be appropriate."). RCHB's argues an exception to the first-filed rule should apply, because GSM filed a declaratory judgment suit in anticipation of a patent suit from RCHB. Dkt. 27 at 14. But a declaratory judgment suit does not necessarily trigger the anticipatory suit exception to the first-filed rule. *See Allstate Ins. Co. v. Clohessy*, 9 F.Supp. 2d 1314, 1316 (M.D. Fla. 1998) ("However, the existence of a first-filed declaratory judgment action does 'not automatically compel abandoning the first-filed rule . . . [a]nd even where those conditions are present, the first-field action is preferred, even if it is declaratory . . .") RCHB's actions, affecting GSM and its customers,[8] **warranted quick and responsive action** by GSM to file a declaratory judgment suit. Therefore, the anticipatory suit exception to the first-to-file rule should not apply.

RCHB also argues that another exception to the first-filed rule applies, because GSM was forum-shopping when it filed suit in the S.D. Texas, where GSM's counsel is located in Houston and have a tactical advantage as being more familiar with the judges in that district, when it could have filed in the N.D. Texas where GSM has a its headquarters office in Irving, Texas. Dkt. 27 at 16. GSM was not forum-shopping when it filed in the S.D. Texas because venue is proper there, and thus, this exception to the first-filed rule should not apply, either.[9]

---

[8] As a result of RCHB's cease and desist letters to Bass Pro Shops, RCBH was successful at having Bass Pro Shops remove three of GSM's hunting blind models from its store shelves and websites, effective August 29, 2023. *See Good Sportsman Marketing, LLC v. Rugged Cross Hunting Blinds, LLC*, No. 4:23-cv-3243, U.S. District Court for the Southern District of Texas, Houston Division (the "Texas suit"), Dkt. 22 at 7-8.

[9] When GSM filed the Texas suit, it plead that venue is proper in the S.D. Texas pursuant to § 1391(b). Texas suit, Dkt. 1 ⁋ 16. RCHB filed a motion to dismiss for improper venue and **agreed** that § 1391 is the proper statute to determine venue in a declaratory patent case, when it stated, "A declaratory judgment alleging non-infringement is governed by the general venue statute, 28 U.S.C. § 1391." Texas suit, Dk. 14 at 7 (citing *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1583 (Fed. Cir. 1990). But now, RCHB appears to be arguing in this suit, that in a declaratory judgment patent

Courts applying the first-filed rule, "generally agree that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." *Martin v. Akers Bioscience, Inc.*, 2014 U.S. Dist. LEXIS 174158, at *6 (M.D. Fla. Dec. 17, 2014) (internal quotations and citation omitted). "[O]nce the court determines that a likelihood of substantial overlap exists between the two suits, it is no longer up to the second filed court to resolve the question of whether both should be allowed to proceed." *Id.* (transferring case to New York under first-filed rule to allow first-filed court to: (1) decide whether Florida action should be allowed to proceed or whether it should be consolidated to New York action; and (2) whether venue is appropriate in New York or Florida.) Since a substantial overlap of issues exists, this Court should sever and transfer RCHB's claims to the Texas suit and allow **the S.D. Texas court** to decide the issue of whether it wants to dismiss or consolidate and determine if venue is appropriate in that district. *See id.* In the alternative, if this Court is not inclined to sever and transfer under the first-to-file rule, then it should sever and transfer RCHB's claims to the N.D. Texas, where GSM maintains its headquarters office in Irving, Texas, which is located in the N.D. Texas.

## II. CONCLUSION

The Court should grant GSM's motion to dismiss for lack of specific personal jurisdiction and improper venue. In the alternative, the Court should sever and transfer RCHB's claims against GSM to the Texas suit under the first-filed rule or transfer them under § 1406(a) to the N.D. Texas where venue is proper under § 1400(b).

---

suit, § 1400(b) applies, which is the reason why it is raising the point that GSM has no offices in S.D. Texas and that its headquarters is in the N.D. Texas, and thus, should have filed the Texas suit in the N.D. Texas. Dkt. 27 at 18. Oddly, RCHB seemed to have forgotten that in the Texas suit, it previously agreed that § 1391(b) controlled venue for a declaratory judgment patent suit.

Dated: January 9, 2024

Respectfully submitted,

*/s/ J. David Cabello*
**J. David Cabello**
*Attorney-in-charge (Admitted Pro Hac Vice)*
Texas Bar No. 03574500
Email: David@CHZFirm.com
**CABELLO HALL ZINDA, PLLC**
801 Travis Street, Suite 1610
Houston, TX 77002
Tel.: 832.631.9990
Fax: 832.631.9991

**James A. Boatman, Jr.**
**BOATMAN RICCI**
Florida Bar No. 130184
Email: courtfilings@boatmanricci.com
3021 Airport-Pulling Rd North, Suite 202
Naples, Florida 34105
Tel: 239.330.1494

*Attorneys for Defendant Good Sportsman Marketing, LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that on January 9, 2024, counsel for Good Sportsman Marketing, LLC initiated service of the foregoing document via the Court's ECF system.

*/s/ J. David Cabello.*
J. David Cabello