**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**RUGGED CROSS HUNTING BLINDS,**
**LLC**,

      Plaintiff,

v.                                   Case No. 8:23-cv-2289-WFJ-NHA

**GOOD SPORTSMAN'S MARKETING,**
**LLC**; **HADLEY DEVELOPMENT, LLC**;
and **TRU**-**VIEW, LLC**,

      Defendants.

_____/

## ORDER

Before the Court are Defendants Hadley Development, LLC ("Hadley") and Tru-View, LLC's ("Tru-View") Motion to Dismiss or Sever and Transfer (Dkt. 17), as well as Defendant Good Sportsman's Marketing, LLC's ("GSM") Motion to Dismiss or Sever and Transfer (Dkt. 19). Plaintiff Rugged Cross Hunting Blinds, LLC ("RCHB") has responded to both motions (Dkt. 26; Dkt. 27), and Defendants have replied (Dkt. 31; Dkt. 32). Upon careful consideration, the Court grants Defendants' motions. RCHB's claims against Hadley and Tru-View are dismissed without prejudice under Federal Rule of Civil Procedure 12(b)(3). The remainder of this case is transferred to the United States District Court for the Southern District of Texas under the first-filed rule.

## BACKGROUND

This patent infringement suit concerns United States Patent No. 11,399,535, "Camouflage Material, For a Hunting Blind" (the "'535 Patent"). Dkt. 1-2 at 2. The '535 Patent generally discloses a partially transmissive mesh material that prevents game from seeing inside a hunting blind structure while allowing hunters to see outside the same. *Id.* at 12. RCHB claims that Defendants have directly or indirectly infringed the '535 Patent by selling or otherwise inducing sales of hunting blinds that utilize similar mesh technology. *See generally* Dkt. 1.

### I.     The Parties

RCHB is a Florida limited liability company with its principal place of business in Tampa, Florida. *Id.* at 2. It got into the hunting blind business in 2015 after its owners "conceived of and reduced to practice the invention disclosed and claimed in the '535 Patent[.]" *Id.* at 5. Since then, RCHB has largely monetized its innovative mesh technology by licensing other companies to make and sell products which incorporate it. *Id.* at 6.

Hadley and Tru-View are Kansas limited liability companies with their principal place of business in Wichita, Kansas. Dkt. 17 at 6. They allegedly share common ownership and operate as outdoor recreational product developers and manufacturers. Dkt. 1 at 3, 6–11. One of their customers is GSM. *Id.* at 6.

GSM is a Texas limited liability company with its principal place of business in Irving, Texas. Dkt. 19 at 23. "GSM sells, advertises, and markets products for outdoor and recreation nationwide through major retailers." Dkt. 1 at 2. Two of these products allegedly infringe the '535 Patent. *Id.*

## II.    The Parties' Dispute

On February 28, 2017, RCHB was issued United States Patent No. 10,765,108 (the "'108" Patent), its first non-provisional patent for a one-way see-through mesh material. *Id.* at 6. Shortly thereafter, RCHB licensed Primos Hunting ("Primos") to make and sell products that utilize the '108 Patent. *Id.* The result was Primos' well-received SURROUNDVIEW hunting blinds. *Id.*

In response to Primos' success, GSM and other manufacturers allegedly approached Hadley about developing a similar one-way see-through material. *Id.* Hadley purportedly began working on this project in 2018, and, on November 30, 2018, Tru-View was formed as a limited liability company. *Id.* On January 11, 2019, Tru-View was issued United States Patent No. 10,457,015 (the "'015 Patent"). *Id.* at 7. The '015 Patent discloses a mesh material that "allows a hunter or other person inside a blind . . . to see things outside the structure without being easily seen[.]" *Id.*

By January 2019, "GSM, [purportedly] with the design help of Hadley, introduced its MUDDY brand hunting blinds that included a one-way see-through mesh material." *Id.* RCHB was not pleased. Accordingly, between July and August

3

2020, RCHB sent letters to Tru-View and GSM explaining that "claims to the RCHB first patent application had been allowed and that RCHB had information that Tru-View had licensed GSM to make and sell hunting blinds with a one-way see-through mesh material." *Id.* On August 2, 2022, RCHB was finally issued the '535 Patent—"[t]he application for the '535 patent was a continuation of RCHB's first filed non-provisional patent application." *Id.*

Between August and September 2022, RCHB sent notices of alleged infringement of the '535 Patent to Tru-View and GSM. *Id.* While Hadley responded on behalf of Tru-View, it is not clear that it responded on behalf of GSM or whether GSM responded at all. *Id.* Notwithstanding, on October 5, 2022, RCHB and Hadley entered into a Mutual Non-Disclosure Agreement (the "Hadley NDA") to explore "the possibility of a business relationship including a license under the RCHB Patents[.]" Dkt. 1-3 at 2. Ultimately, RCHB and Hadley did not resolve RCHB's infringement claims or reach a licensing agreement at this time. Dkt. 1 at 9.

On December 5, 2022, RCHB filed a patent infringement suit against FeraDyne Outdoors, LLC ("FeraDyne") in the United States District Court for the Western District of Wisconsin.[1] The parties subsequently communicated about opening up negotiations for a global settlement. And, in February 2023, Tru-View

---

[1] *See Rugged Cross Hunting Blinds, LLC v. FeraDyne Outdoors, LLC*, Case No: 3:22-cv-690 (W.D. Wis.).

and RCHB entered into their own Mutual Non-Disclosure agreement (the "Tru-View NDA"). Like the Hadley NDA, the Tru-View NDA provided the following:

> This Agreement, and any disputes directly or indirectly arising from this Agreement, shall be governed by the laws of the State of Florida, without reference to its choice of law principles. Each of the parties hereby irrevocably consents and submits to the exclusive jurisdiction of the state and federal courts located in Florida for any such disputes, and hereby irrevocably waives any objections to the laying of venue in such courts.

Dkt. 1-3 at 4 (the Hadley NDA); Dkt. 1-4 at 4 (the Tru-View NDA).

Unfortunately, the parties were unable to resolve any of RCHB's patent infringement claims or reach a licensing agreement. Dkt. 1 at 10. RCHB maintains that Defendants continue to sell products or induce the sale of products which infringe the '535 Patent. *Id.*

## III.   The Parties' Lawsuits

On August 31, 2023, following another notice of alleged infringement, GSM filed a declaratory judgment action against RCHB in the United States District Court for the Southern District of Texas (the "Texas Lawsuit"). *Id.* at 11.[2] Therein, GSM seeks a declaratory judgment that the '535 and '108 Patents are invalid and not infringed by GSM's products. Tex. Dkt. 1 at 1. GSM also brings a claim of tortious

---

[2] *See Good Sportsman Marketing, LLC v. Rugged Cross Hunting Blinds, LLC*, Case No. 4:23-cv-3243 (S.D. Tex.). Citations to the Texas Lawsuit docket will be as follows: "Tex. Dkt. [x]."

interference against RCHB for allegedly interfering with GSM's contracts and relationships with various retailers. *Id.* at 7–8.

Approximately two months later, RCHB filed the instant patent infringement suit against Defendants. *See generally* Dkt. 1. RCHB brings five claims: Count I—direct infringement of the '535 Patent against GSM as to GSM's "Ameristep Blinds"; Count II—direct infringement of the '535 Patent against GSM as to GSM's "Muddy Blinds"; Count III—direct infringement of the '535 Patent against Hadley; Count IV—indirect infringement of the '535 Patent against Hadley; and Count V—indirect infringement of the '535 Patent against Tru-View. *Id.* at 11–16. Defendants now move to dismiss or sever and transfer RCHB's claims. Dkt. 17; Dkt. 19.

## LEGAL STANDARDS

### I.   Personal Jurisdiction

Federal Circuit law controls the analysis of whether personal jurisdiction exists over an out-of-state patent suit defendant. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564–65 (Fed. Cir. 1994). This calls for "a two-step inquiry." *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed. Cir. 1998). The questions are, "first, whether the forum state's long-arm statute permits service of process and, second, whether the assertion of jurisdiction is consistent with due process." *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1377 (Fed. Cir. 2015).

In analyzing the due process prong, Courts consider three factors: "(1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities within the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair.'" *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001) (quoting *Akro Corp. v. Luker*, 45 F.3d 1541, 1546 (Fed. Cir. 1995)). The plaintiff bears the burden of proving the first two elements, which "correspond with the 'minimum contacts' prong of the *International Shoe* analysis." *Id.*[3] If the plaintiff does so, the burden shifts to the defendant to "mak[e] a compelling case that jurisdiction would be unconstitutional" under the third factor. *Akro Corp*, 45 F.3d at 1546.

## II.   Venue

In patent infringement cases, venue is determined by 28 U.S.C. § 1400(b) rather than 28 U.S.C. § 1391. *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 265–66 (2017). Section 1400(b) provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement *and* has a regular and established place of business." § 1400(b) (emphasis added). "'[R]esidence' in § 1400(b) has a particular meaning as applied to domestic corporations: it refers only to the state of incorporation." *TC Heartland LLC*, 581 U.S. at 267–68 (cleaned up).

---

[3] *See generally International Shoe Co. v. Wash.*, 326 U.S. 310 (1945).

Further, there are "three general requirements" to show a regular and established place of business: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). Ultimately, "the plaintiff has the burden of establishing proper venue[.]" *Westech Aerosol Corp. v. 3M Co.*, 927 F.3d 1378, 1382 (Fed. Cir. 2019).

## III.   First-Filed Rule

"Where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit[.]" *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005). "The first-filed rule" consequently "provides that when parties have instituted competing or parallel litigation in separate courts, the court initially seized of the controversy should hear the case." *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d 71, 78 (11th Cir. 2013). "[T]he party objecting to jurisdiction in the first-filed forum carr[ies] the burden of proving 'compelling circumstances' to warrant an exception[.]" *Manuel*, 430 F.3d at 1135 (citation omitted). If no exception is established, "the proper course of action is for the court to transfer the case to the first-filed court to determine which case should, in the interests of sound judicial administration and judicial economy, proceed." *Wells Fargo Bank, N.A. v. W. Coast Life Ins. Co.*, 631 F. Supp. 2d 844, 847 (N.D.

Tex. 2009); *see also Collegiate Licensing Co.*, 713 F.3d at 78 ("The first-filed rule not only determines which court may decide the merits of substantially similar cases, but also generally establishes which court may decide whether the second filed suit must be dismissed, stayed, or transferred and consolidated.").

## DISCUSSION

The Court will address Hadley and Tru-View's venue argument before shifting to consider GSM's personal jurisdiction and first-filed rule arguments.

### I.  Venue (as to Hadley and Tru-View)

Under 28 U.S.C. § 1400(b), the Middle District of Florida is not a proper venue for GSM's patent infringement claims against Hadley and Tru-View. Hadley and Tru-View are both Kansas limited liability companies, Dkt. 1 at 2–3, which means that they do not "reside" in Florida, *See TC Heartland LLC*, 581 U.S. at 267–68. Further, while Hadley and True-View are accused of committing infringement in Florida, there are no facts which suggest that either have a "regular and established place of business" in the State. The closest RCHB comes to carrying its burden of establishing such facts is stating that, "upon information and belief, the Defendants have a regular and established place of business in this district." Dkt. 1 at 4. But "[s]imply stating that [Defendants] ha[ve] a regular and established place of business within the judicial district, without more, amounts to a mere legal conclusion that the [C]ourt is not bound to accept as true." *Westech Aerosol Corp.*, 927 F.3d at 1382.

And a "recitation of § 1400(b) is insufficient to survive a motion to dismiss for improper venue." *Id.*

Recognizing this, RCHB attempts to rely on waiver. RCHB essentially argues that the instant dispute directly or indirectly arises out of the Hadley and Tru-View NDAs, and that Hadley and Tru-View have therefore waived any objections to the laying of venue in this Court under the NDAs' forum-selection clauses. Hadley and Tru-View respond by arguing that the NDAs cannot be read so broadly.

The Court agrees with Hadley and Tru-View. Although it is true that "[t]he Eleventh Circuit has given a broad interpretation to forum selection clauses[,]" *Gen. Pump & Well, Inc. v. Laibe Supply Corp.*, No. CV-607-30, 2007 WL 4592103, at *3 (S.D. Ga. Dec. 28, 2007), and that the governing law and forum selection provision "in any patent license agreement . . . covers disputes concerning patent issues[,]" *Texas Instruments Inc. v. Tessera, Inc.*, 231 F.3d 1325, 1331 (Fed. Cir. 2000), the subject NDAs are not licensing agreements and RCHB's claims do not directly or indirectly arise from them. The stated purpose of the NDAs was to facilitate "discussions concerning [] potential business relationship[s]" by agreeing not to disclose confidential information to third parties. Dkt. 1-3 at 2; Dkt. 1-4 at 2. RCHB does not claim a breach of this duty. Nor does RCHB claim that Hadley or Tru-View used confidential information for improper purposes. The patent allegedly infringed,

moreover, is now public information. There is simply no meaningful relationship between the NDAs and the instant dispute.

The Federal Circuit's discussion in *Kannuu Pty Ltd. v. Samsung Elecs. Co.*, 15 F.4th 1101 (Fed. Cir. 2021) reinforces this conclusion. There, the parties entered into a non-disclosure agreement "to protect confidential business information while engaging in business discussions." *Id.* at 1104. The agreement provided that "[a]ny legal action, suit, or proceeding arising out of or relating to this Agreement or the transactions contemplated hereby must be instituted exclusively in a court" located in "the borough of Manhattan, City of New York[.]" *Id.* at 1105 (cleaned up). When no deal was reached through the agreement, the plaintiff sued the defendant for patent infringement and filed a petition for *inter partes* review. *Id.* "The underlying question" presented was "whether the forum selection clause in the [agreement]" prohibited the defendant from "petitioning for *inter partes* review of [plaintiff's] patents at the Board[.]" *Id.*

The Federal Circuit found that it did not. In so doing, the court made two significant points. The first was somewhat specific to the agreement in *Kannuu*:

> [E]ven assuming the parties understood there was a chance they would ultimately enter into a separate intellectual property license agreement down the road, the issues underlying patent infringement and invalidity fall outside the scope of the NDA. This is not to say we ignore the realities of the positions of the parties in entering into an NDA. Surely the parties entered into the NDA to exchange information in furtherance of *some sort* of business relationship. The Agreement explains as much. *See* J.A. 211 ("Company and Samsung desire to disclose to one

another certain Confidential Information ... *to further a business relationship between the parties* ... and to protect such Confidential Information from unauthorized disclosure." (emphasis added)). But that does not mean that future, hoped-for transactions fall within the scope of the Agreement.

*Id.* at 1107. The second point concerned "the fundamental difference between the nature of a patent license agreement and an NDA[:]"

An adjudication of patent infringement allegations or a patent's validity are patent-centric considerations that will necessarily impact the rights under a patent license agreement. But the same is not true for an NDA: an invalidated patent or non-infringement determination does not change, disrupt, or otherwise impact the parties' NDA obligations. Likewise, a finding that a party has breached an NDA is devoid of undertaking any patent-related determinations such as infringement or validity.

*Id.* at 1108.

Both of these points are applicable here. RCHB, Hadley, and Tru-View never entered into a separate license agreement. Indeed, the NDAs, which are substantially similar to the agreement in *Kannuu*, were merely a means of facilitating relationships which never came to fruition. A finding of infringement would have no impact on the parties' obligations thereunder. Accordingly, this dispute does not arise from the parties' agreement to merely share confidential information with one another.

As a final matter, the Court notes that *Cocona, Inc. v. Columbia Sportswear Co.* is persuasive. No. 17-CV-01195-CMA-CBS, 2017 WL 4029860 (D. Colo. Sept. 12, 2017), *report and recommendation adopted*, No. 17-CV-01195-CMA-CBS, 2017 WL 11547853 (D. Colo. Oct. 24, 2017). There, the parties entered into a

"Reciprocal Non-Disclosure Agreement" in anticipation of a "possible business relationship that never consummated." *Id.* at *1. After the plaintiff filed suit for patent infringement, the defendant attempted to enforce the forum-selection clause therein because the parties' patent dispute was arguably "regarding [the] agreement." *Id.* The plaintiff responded by arguing that "because the [a]greement did not grant any license or patent rights, it ha[d] no bearing on the infringement of a public patent" and that "the parties could have written a broader forum-selection clause had they intended the [a]greement to govern all future actions concerning the parties." *Id.* at *3.

The *Cocona* court ultimately agreed with the plaintiff. It explained that:

> Considering the Agreement in the context of its formation, the term "regarding" is unlikely to be so broad as to include Cocona's Amended Complaint. There is no confidential information alleged in the Complaint or Amended Complaint, and the business negotiations under the Agreement ended several years ago. The harm that the "Reciprocal Non–Disclosure Agreement" was intended to prevent, the unlawful disclosure of confidential information, is no longer possible in this context because Cocona's allegations concern only public information. To consider this action as "regarding" the Agreement would be to construe the Agreement so expansively as to include almost any future activity that has any factual link with the parties' initial business discussions.

*Id.* So it is here. Hadley and Tru-view have not waived venue under the NDAs.

"The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C.

§ 1406(a); *see also* Fed. R. Civ. P. 12(b)(3). Given the existence of multiple defendants, and the applicability of the first-filed rule (discussed below), the Court finds dismissal of RCHB's claims against Hadley and Tru-View to be appropriate. Counts III, IV, and V are severed and dismissed without prejudice.

## II.     Personal Jurisdiction (as to GSM)

GSM does not dispute that it is reached by Florida's long-arm statute or that it has established minimum contacts with Florida. *See generally* Dkt. 19 at 8–16. It follows that the only personal jurisdiction issue to consider is whether the assertion of jurisdiction over GSM would "comport with notions of fair play and substantial justice" under the Due Process clause. *Akro Corp*, 45 F.3d at 1546. The Supreme Court has provided five considerations relevant to this inquiry: (1) "the burden on the defendant;" (2) "the forum State's interest in adjudicating the dispute;" (3) the plaintiff's interest in obtaining convenient and effective relief;" (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies;" and (5) "the shared interests of the several States in furthering fundamental substantive social policies." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (cleaned up).

Consideration of these factors does not render jurisdiction unreasonable. As an initial matter, GSM admits that it "operates nationally, with over 40 brands involved with hunting, shooting sport, rugged outdoors, and fishing[.]" Dkt. 19 at

12. This suggests that the financial burden of an out-of-state patent suit will be manageable for GSM. The nature of the instant suit also alleviates a number of possible evidentiary burdens, as there will likely not be a significant amount of physical evidence for GSM to produce. What is more, even if Florida does not have a significant interest in adjudicating this dispute (which is questionable), RCHB clearly has a substantial interest in obtaining relief in this district. RCHB only has two members and is headquartered in Tampa, Florida. *Id.* at 10. Lastly, as GSM recognizes, "the shared interests of the several States in furthering fundamental substantive social policies" do not weigh in GSM's favor—the same federal patent law will apply wherever this case is tried.

The burden of proof is on GSM to present "a compelling case that jurisdiction would be constitutionally unreasonable." *Akro Corp*, 45 F.3d at 1546. Given the foregoing, GSM has not carried this burden. The Court has jurisdiction.

### III.   First-Filed Rule (as to GSM)

Despite having jurisdiction over GSM, the Court finds that it would be improvident to adjudicate the instant case in light of the first-filed rule. "In making the determination whether to transfer pursuant to the first-filed rule, the court where the second-filed action was filed considers the following: '(1) the chronology of the two actions; (2) the similarity of the parties, and (3) the similarity of the issues.'" *Salt Life, LLC v. Shaka Life, Inc*, No. 3:18-CV-1151-J-39-JRK, 2018 WL 8332698,

at *2 (M.D. Fla. Nov. 30, 2018) (quoting *Rudolph & Me, Inc. v. Ornament Cent., LLC.*, No. 8:11-CV-670-T-33EAJ, 2011 WL 3919711, at *2 (M.D. Fla. Sept. 7, 2011)). Here, these factors all weigh in favor of transfer: RCHB filed instant action after GSM filed the Texas Lawsuit; the parties are identical (now that Hadley and Tru-View have been dismissed); and the issues in this case are inherently related to the same '535 Patent issues presented by GSM in the first-filed suit. *See Actsoft, Inc. v. Alcohol Monitoring Sys., Inc.*, No. 8:08-CV-00628-T-23-EAJ, 2008 WL 2266254, at *1–2 (M.D. Fla. June 3, 2008) (finding similar issues and applying the first-filed rule where both cases in question involved putative infringement of the same patent). Transfer is therefore appropriate unless RCHB can prove "compelling circumstances to warrant an exception to the rule." *Salt Life, LLC*, 2018 WL 8332698, at *2.

RCHB's arguments are not compelling. To begin with, the Court is not persuaded by RCHB's argument that the Texas Lawsuit is purely anticipatory in nature. While GSM likely anticipated litigation, RCHB itself states that "[a]fter RCHB sent correspondence to Bass Pro Shop on August 24, 2023, GSM immediately filed its Texas suit[.]" Dkt. 27 at 15. This suggests that the Texas Lawsuit was a response to RCHB's interference with GSM's business relationships, a possibility which is further evinced by GSM's claim of tortious interference. *See* Tex. Dkt. at 7–8.[4] All the same, "even if a court finds that a [first] filing is

---

[4] The Court expresses no opinion concerning the merits of this claim.

anticipatory, such a finding does not automatically compel abandoning the first-filed rule. Rather, the matter remains one of discretion for the trial court." *Collegiate Licensing Co.*, 713 F.3d at 79.

Because RCHB's other equitable arguments are unavailing, the Court believes that its discretion is best exercised by following the widely favored first-filed rule. First, as explained above, "[t]he first-filed rule not only determines which court may decide the merits of substantially similar cases, but also generally establishes which court may decide whether the second filed suit must be dismissed, stayed, or transferred and consolidated." *Collegiate Licensing Co.*, 713 F.3d at 78. Whether GSM "engaged in forum shopping when it first-filed its Texas suit" is consequently irrelevant. Dkt. 27 at 16. Second, because Hadley and Tru-View are no longer parties to this case, "this Court is [not] better equipped to explore the unique issues stemming from the relationship between GSM and its suppliers." *Id.* at 17. Finally, although RCHB likely "has significantly less time and means for traveling to different forums to litigate" than GSM, this did not stop RCHB from filing suit against FeraDyne in Wisconsin. *Id.* And even if the Court declined to apply the first-filed rule, RCHB would still have to defend the Texas Lawsuit. There is simply no compelling reason to abandon the rule.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

(1) Hadley and Tru-View's Motion (Dkt. 17) is **GRANTED**.

(2) GSM's Motion (Dkt. 19) is **GRANTED**.

(3) Counts III, IV, and V are severed and dismissed without prejudice for improper venue.

(4) The remainder of this case is transferred to the United States District Court for the Southern District of Texas under the first-filed rule.

**DONE AND ORDERED** at Tampa, Florida, on January 22, 2024.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

<u>**COPIES FURNISHED TO**</u>:
Counsel of Record